THE COSMOPOLITAN NATIONAL BANK OF CHICAGO *et al.*, Plaintiffs-Appellees, *v.* ZONING BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)   No. 77-998

Opinion filed August 21, 1978.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Philip L. Bronstein, Assistant Corporation Counsel, of counsel), for appellants.

Theodore J. Novak and James R. Mikes, both of Rudnick & Wolfe, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs Stephen Mack and Richard Kranicke are the sole beneficial owners of a vacant tract of land (hereinafter subject property) located on the southwest corner of Harlem and Cornelia Avenues in Chicago. The subject property lies within a B4-2 zoning classification, a classification which permits residential use of the ground floor of any building only if a special use variation is granted. (See Chicago, Ill., Mun. Code, ch. 194A, par. 8.3—4(1977).) The above plaintiffs and the legal title holder of the subject property Cosmopolitan National Bank of Chicago, applied to the zoning administrator for such a special use permit to construct three six-unit apartment buildings on the subject property with residential uses on the ground floors. The administrator denied the application and plaintiffs then applied to the Zoning Board of Appeals which also denied the application. Plaintiffs then filed a complaint in the circuit court of Cook County seeking administrative review of the decision of the Zoning Board of Appeals. (See Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) After

considering the testimony heard by the Zoning Board of Appeals and hearing arguments of counsel, the circuit court reversed the decision of the Zoning Board of Appeals and ordered that the special use variation requested by plaintiffs be granted. From this order, the Zoning Board of Appeals now appeals.

On appeal defendants contend that the plaintiffs have not satisfied their burden of showing that a special use permit should be granted. Defendants argue that plaintiffs failed to prove that the proposed use (1) is necessary for the public convenience; (2) would not cause substantial injury to the value of other property in the neighborhood; and (3) will conform to the applicable regulation of the district in which it is to be located.

We affirm.

The evidence presented at the hearing before the Zoning Board of Appeals indicates that the subject property is rectangular in shape with 132 feet frontage on Cornelia Avenue and 126 feet on Harlem Avenue. Surrounding the subject property is a liquor store to the north across Cornelia Avenue, a school and auto repair shop to the east across Harlem Avenue, a fast food restaurant to the south, and single family homes to the west. Abutting Harlem Avenue north and south of the subject property there is a mixture of commercial, institutional and residential uses. There are a number of apartment buildings abutting the east side of Harlem Avenue three blocks to the north of the subject property which have residential uses on the ground floor. However, the predominant use of the property abutting Harlem Avenue is commercial. To the east and west of the mixture of uses abutting Harlem, the land is occupied almost exclusively by single family residences.

Four witnesses, all called by the plaintiffs, testified before the Zoning Board of Appeals. The first of these witnesses, Richard Kranicke, testified that he had purchased the subject property in May of 1972 for approximately $83,000 and that for the past several years he had been unsuccessful in repeated attempts to sell the property at the market price for similar properties in the area.

The next witness called by the plaintiffs was Thomas Buckley, a city planner and zoning consultant. Mr. Buckley testified that he was familiar with the subject property and the surrounding zoning and land uses. Mr. Buckley testified that local brokers had been unsuccessful in attempts to sell the property due to the zoning restrictions. Mr. Buckley personally had contacted fast food chains who refused to buy the subject property because they required more parking than available. Mr. Buckley stated that there was a demand and need for additional residential units in the area and that the existing apartment units along Harlem Avenue had been a distinct asset. In Mr. Buckley's professional opinion, plaintiffs' proposed use was the highest and best use of the subject property and more

compatible with the uses adjoining the subject property. The proposed use was preferential to commercial use from the traffic standpoint as well. He concluded that the property could not be developed under existing zoning restrictions.

Mr. Buckley also testified that the proposed use would not harm the existing commercial uses. He reasoned that the area did not contain much continuity in its commercial development. The existing commercial uses were of the type which were highway oriented, with single-purpose destinations, creating a minimum of pedestrian traffic from one commercial use to another. Mr. Buckley opined that breaks in the commercial pattern would improve the aesthetic appearance and overall character of the neighborhood and would be an asset to the city of Chicago because it would help to create a firmer, more viable tax base.

Mr. Edward Chrapla, a traffic expert, testified that he conducted traffic surveys of the subject property. From his surveys he projected 12.4 trips during the worst traffic hours on Friday evening. He projected 55 to 60 trips to and from the property would be generated by commercial use. He stated that the proposed use would be much safer than a commercial use because it generated fewer trips, had no driveway cuts onto Harlem Avenue, and had a lower traffic volume. Mr. Chrapla prepared the parking design of plaintiffs' proposed use and testified that it complied fully with the requirements of the B4-2 zoning classification. He further indicated that if the property were developed with commercial uses on the ground floor, the parking, although complying with the B4-2 zoning classification, would be inadequate in a practical sense.

Francis S. Lorenz, Jr., a professional real estate appraiser and consultant, testified that in his opinion the subject property was not suitable for commercial development because the lot was too small to accommodate the number of cars a commercial establishment requires, the site does not border on the intersection of two section line streets, and a huge shopping center had just been constructed one mile away from the subject property. Also, other shopping centers in the area detracted from the demand for small commercial sites. In Mr. Lorenz' opinion, there was no need or demand for further commercial development, but a strong demand for additional residential dwelling units in the area. He also felt that the highest and best use of the subject property would be to place residential uses on the ground floor. Mr. Lorenz estimated the fair market value of the subject property, as zoned, to be $75,000, and the value, if the special use was granted, to be $135,000. In his opinion, the proposed use would have no depreciatory effect on the value of other properties in the area.

The alderman for the ward in which the subject property is located also testified in behalf of the plaintiffs. He stated that no parties had objected

to him concerning the special use despite personal and published notice to all surrounding property owners. He had also discussed the subject site with several parties interested in purchasing it. However, they became disinterested when informed of the zoning restrictions. He concurred with Mr. Buckley's and other witnesses' descriptions of the area and surrounding uses and stated that the proposed use would be compatible with the neighborhood.

It is well settled that an applicant for a special use permit has the burden of proving that the proposed use meets all of the standards required by the ordinance. (*Mile Square Service Corp. v. City of Chicago Zoning Board of Appeals* (1976), 42 Ill. App. 3d 849, 356 N.E.2d 971.) The Zoning Board of Appeals argues that the petitioners have not met their burden of showing why a special use permit should be granted. It specifically contends that the following standards outlined in the Chicago Zoning Ordinance have not been met:

"* * * No special use shall be granted by the Zoning Board of Appeals unless the special use:

(1)a. Is necessary for the public convenience at that location;

b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected, and

(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

* * *

(4) Such special use shall conform to the applicable regulations of the district in which it is to be located." (Chicago, Ill., Mun. Code, ch. 194A, par. 11.10—4 (1977).)

We first note that the requirement that the special use be necessary for the public convenience at that location has been construed to mean "expedient" or "reasonably convenient" to the public welfare. (*Foster & Kleiser, Division of Metromedia, Inc. v. Zoning Board of Appeals* (1976), 38 Ill. App. 3d 50, 347 N.E.2d 493.) After a review of the evidence presented at the hearing we conclude that the manifest weight of the evidence indicates that the special use is reasonably convenient to the public welfare, will protect the public health, safety and welfare, and will not cause substantial injury to other property in the neighborhood.

Although the testimony at the hearing indicated that there was extensive commercial development along Harlem Avenue near the subject property, both Mr. Buckley and Mr. Lorenz indicated there was a need and a demand for residential units in the area. Mr. Buckley further indicated that residential units would rejuvenate and raise property values in the area more than commercial development. There was also testimony that from a traffic standpoint, residential units were preferable to commercial development. There was no evidence presented contradicting

any of the above testimony. The record also reflects that surrounding property owners were notified of the request for a special use permit and that none of them complained.

Defendants, however, argue that the area in which the subject property is located is primarily commercial in nature and argue that the placing of residential uses on the ground floor would disrupt the commercial continuity and integrity of Harlem Avenue and thus cause injury to existing businesses in the area. We disagree. All property owners in the area were notified of the request for a special use permit and there is no indication in the record that any of them voiced any objection. Mr. Buckley testified that there was not much continuity in the area's commercial development and that the commercial uses in existence were highway oriented single-purpose destinations which did not create much pedestrian traffic from one use to the other.

Mr. Lorenz testified that there is no need or demand for further commercial development in the area. He also indicated that the lot was too small to accommodate the number of cars a commercial use demands. There is also testimony in the record that commercial enterprises were contacted in an attempt to use the ground floors for commercial purposes and that each of these attempts met with failure. Again, there was no evidence presented by the city contradicting any of the above testimony.

Defendants finally contend that plaintiffs failed to establish that the proposed use would conform to the applicable regulations of the district in which it is to be located. Defendants specifically contend that the plan submitted for the proposed use did not comply with the zoning requirements for parking spaces for the handicapped. (See Chicago, Ill., Mun. Code, ch. 194A, pars. 7.12(5) and 7.12(10) (1977).) We believe this argument to be without merit. The Zoning Board of Appeals made no specific finding that the plans submitted were not in compliance with the requirements for parking for the handicapped. Indeed, Messrs. Buckley, Kranicke and Chrapla testified that the plans complied with the zoning ordinance regulations for parking. Mr. Chrapla testified that the Village of Skokie, his employer, has a similar requirement for handicapped parking and that the same plan meets the Skokie handicapped parking requirements. Considering the above testimony, we find no conflict with the zoning regulation concerning handicapped parking spaces.

For the foregoing reasons, we affirm the order of the circuit court of Cook County.

Order affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.