EDWARD KRAEMER & SONS, INC., Plaintiff-Appellant,

v.

SAUK COUNTY BOARD OF ADJUSTMENT, Defendant-Respondent.†

Court of Appeals

*No. 91-0886. Submitted on briefs January 8, 1992.—Decided March 4, 1993.*

(Also reported in 499 N.W.2d 211.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *Lauri D. Morris* and *Richard L. Bolton* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

For the defendant-respondent the cause was submitted on the briefs of *Eugene R. Dumas* of *Sauk County Board of Adjustment* of Baraboo.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Edward Kraemer & Sons, Inc., appeals from an order affirming the Sauk County Board of Adjustment's denial of Kraemer's application for a special exception permit to conduct mineral extraction activities on its land. We conclude that the board acted outside the standards of the Sauk County Zoning Ordinance when it denied Kraemer's application.[1] We therefore reverse the circuit court's order and direct the court to remand Kraemer's application to the board to be considered under the standards prescribed by sec. 7.04(2)(i) of the Sauk County Zoning Ordinance.

On September 11, 1989, the board granted Kraemer a five-year, renewable, special exception permit to conduct mineral extraction activities[2] on a twenty-seven

---

[1] Upon certiorari review under sec. 59.99(10), Stats., we review the decision of the board for compliance with familiar standards, including "whether [the board] acted according to law." *Schalow v. Waupaca County*, 139 Wis. 2d 284, 286, 407 N.W.2d 316, 317 (Ct. App. 1987). In *Schalow*, we held that when the board of adjustment acts outside the standards of the zoning ordinance, our appropriate action is to direct the trial court to remand the case to the board for further proceedings under the appropriate standards. *Id.* at 290, 407 N.W.2d at 319.

[2] Mineral extraction activities include commercial excavation, mining, and quarrying of sand, gravel, and crushed or broken stone. Section 7.04(2)(i)19, Sauk County Zoning Ordinance.

acre parcel of land for which Kraemer had an option to purchase. Subsequently, Kraemer applied for the special exception permit at issue to conduct mineral extraction activities on an adjacent forty-acre parcel. On January 25, 1990, after a hearing, the board granted Kraemer's application, subject to conditions. However, because of a defect in the hearing notice, the board held another hearing on February 22, 1990, at which a number of persons opposed the grant of a permit because of their concern that Kraemer's mineral extraction activities would adversely affect a portion of the Baraboo Bluffs located on the subject property. On March 1, 1990, the board unanimously denied Kraemer's application.

In its decision, the board said it was not rejecting Kraemer's right to use the property which it owns:

> Rather, the members of the Board believe that the result of this decision is merely to respond to the statement made by Mr. William Kraemer at the public hearing that "If some way we can show you that we do intend to honor our commitment to preserve the bluff, we will do it." As both Mr. Kraemer and Mr. Isenberger, acting in the capacity of chief spokesperson for Kraemer & Sons, repeatedly indicated, the company is willing to make a documented commitment to not harm what everyone seems to recognize as an historic and valuable landmark.

Mr. Kraemer stated.

> [W]e are trying to be good neighbors here and we would be willing to commit to a scenic easement with the appropriate organization and we don't know at this point which organization that is. But, if there is some way that we can show you that we do intend to honor our commitment to preserve the bluff, we will do it.

171

Mr. Isenberger stated:

> [W]hat we have talked about in the company and have agreed among company personnel, that we would be willing to give—and I don't know if scenic easement is the proper terminology—we would be willing to give a scenic easement on that east bluff to whoever the right people would be. The Ice Age Trail people are involved. Sierra Club, Nature Conservancy, and I don't know and we don't know at this point who the right group would be, but we would be willing to sit down and discuss that to show that, or to indicate that, no, we don't want to go over there. We have said that and . . . this is how we would approach that. We would be willing to give an easement on the east side of that 40 acres to what the body might be that would have jurisdiction or whatever.

As to these representations by Kraemer, the board stated in its decision:

> While there was general indication by the Kraemer & Sons' representatives that they would be willing to convey some kind of easement to that portion of its property on this bluff which is of unquestionable significance, the record before the Board of Adjustment at this time is not such that the Board is convinced that it can condition the granting of any additional permit upon the conveying of an easement which it might describe as part of such a permit. Certainly, it would be best if the parties conveying and receiving the easement were to fully negotiate and stipulate to the voluntary and satisfactory nature of any conveyance of property rights.

It is undisputed that Kraemer's application complied with all the requirements of the zoning ordinance. The inability of the board to fashion a condition to

protect the bluff did not, therefore, result from a failure of Kraemer to satisfy the conditions of the zoning ordinance, but resulted solely from the inability of the board to fashion an appropriate condition through which Kraemer's commitment could be fulfilled.

The question before us, therefore, is whether it was Kraemer's responsibility to submit a "documented commitment" which would fulfill its responsibility to preserve the bluff area, or whether it was the board's responsibility to fashion a condition which would accomplish that objective. To decide this question we must examine the Sauk County Zoning Ordinance provisions and the nature of special exception permits.

Section 7.04(2)(i)19 of the zoning ordinance permits mineral extraction activities in the "Agricultural District" under a special exception permit issued by the board of adjustment. Subparagraph c.1. prescribes the standards for decisions by the board on special exception permit applications for mineral extraction activities. These standards include an operations plan, which "will protect affected public and private rights," and a reclamation plan which "will result in a condition which is reasonably safe, attractive and, if possible, conducive to productive new uses for the site."

Kraemer submitted such plans with its application. The board did not find that these plans were insufficient to comply with the zoning ordinance. Subparagraph c.1.(d) provides: "The board *shall* attach such conditions to each approved application as are necessary to assure that the operation will satisfy the standards set forth above." (Emphasis added.)

We conclude that under these standards, if the board of adjustment determined that conditions were

necessary to protect the Baraboo Bluffs from Kraemer's mineral extraction activities, it was the board's duty to formulate such conditions. The board could not deny Kraemer's application simply because it could not "at that time" fashion such conditions.

It is important to our discussion and decision to recognize that activities subject to special exception permits are permitted uses in the zoning district in which they are located. "Special exception" is therefore an inaccurate description of the permitted use. RATHKOPF states that: " 'Special exception' is clearly a misnomer. Since the use specifically provided for in the ordinance as one to be permitted where the conditions legislatively prescribed are found, no exception to the ordinance is being made." 3 ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 41.04, at 41-17 (1992) (hereinafter RATHKOPF).

RATHKOPF quotes *Syosset Holding Corp. v. Schlimm*, 159 N.Y.S.2d 88, 89-90 (N.Y. Sup. Ct. 1956), *modified*, 164 N.Y.S. 2d 890 (N.Y. App. Div. 1957), holding as follows:

> The granting of a special exception is apparently not too generally understood. It does not entail making an exception to the ordinance but rather permitting certain uses which the ordinance authorizes under stated conditions. In short, a special exception *is one allowable when the facts and conditions specified in the ordinance as those upon which the exception is permitted are found to exist.*

RATHKOPF § 41.05, at 41-23 (emphasis in original). RATHKOPF also cites *Irvine v. Duval County Planning Comm'n*, 495 So.2d 167 (Fla. 1986), where it was held that once the applicant showed that his application met

the statutory criteria for granting a special exception, the burden was on the planning agency to show by substantial competent evidence, presented at the hearing and made part of the record, that the special exception requested by the applicant did not meet the requisite standard and was, in fact, adverse to the public interest. RATHKOPF § 41.14, at 41-89 n.3.

The board stated that it believed "it has a responsibility and authority to act to protect the public from the harm which would be involved in the substantial desecration of this nationally recognized landmark." The board further stated that the record reflected Kraemer's recognition of the need "to work out satisfactory assurances to supplement the operations plan in such a way as to calm the fears of neighbors and other advocates for preservation of this scenic bluff that desecration will not occur."

RATHKOPF points out that the environmental impact of a proposed conditional use (special exception) was not a significant consideration in the earlier cases in which reference was made to public health, safety, morals, or general welfare as a standard. RATHKOPF § 41.14 [4], at 41-97. However, protection of the environment is "presently considered relevant" to a determination of whether a particular conditional use or special exception should be permitted on a particular site. *Id.* at 41-97, 41-98. RATHKOPF says, however, that:

> This does not mean that even where it is found that a conditional use will have adverse environmental impact it must be denied; it merely means that the decision-making body must take environmental factors . . . into consideration, either in connection with standards that condition the grant of a special permit upon the absence of significant environmental

175

*impacts or in connection with the imposition of conditions designed to lessen them.*

*Id.* at 41-98 (footnote omitted; emphasis added).

■ The governing body of Sauk County has already determined that extraction of minerals in the agricultural district is permitted, subject to a special exception permit. The county board has provided that the board of adjustment "shall" attach such conditions to each approved application as are necessary to assure that the operation will satisfy the standards of the ordinance. We thus conclude that it was the board's responsibility, not Kraemer's, to fashion the appropriate conditions to Kraemer's special exception permit which would preserve the bluff area from the encroachment of Kraemer's mineral extraction activities.

■ We also conclude that the board erred in denying Kraemer's application until Kraemer had "the opportunity to convince their opponents of their commitment to being good neighbors." The board of adjustment may consider evidence submitted by the persons most familiar with the neighborhood insofar as it bears on the objective factors important to the future of the area affected by the proposed use. RATHKOPF § 41.14[3]a, at 41-93 (citing *Anderson v. Peden*, 284 Or. 313, 587 P.2d 59 (1978)). However, neighborhood objections cannot otherwise be a criterion to be taken into account. *Id.* at 41-91. "Zoning should not be allowed or disallowed on the basis of a plebiscite of a neighborhood, although evidence submitted by persons living in the neighborhood who would be most familiar with it and the conditions therein may be considered." *Id.* at 41-91, 41-92 (footnotes omitted).

The board of adjustment was required to act on Kraemer's application under the standards imposed by the county zoning agency. *Schalow v. Waupaca County*, 139 Wis. 2d 284, 287, 407 N.W.2d 316, 318 (Ct. App. 1987). In this case, it acted outside those standards. We therefore reverse the order appealed from and direct the circuit court to remand the matter to the board for further proceedings under a correct view of the standards. *Id.* at 290, 407 N.W.2d at 319.

*By the Court.*—Order reversed and cause remanded with directions.

GARTZKE, P.J. (*dissenting*). The board took Kraemer at its word. The board left Kraemer to attempt to do what Kraemer said it was willing to do. Whether Kraemer succeeds or fails, it can later return to the board and then request the permit. The board acted reasonably and I would affirm it.