F. James SMART, Plaintiff-Respondent-Petitioner,

v.

DANE COUNTY BOARD OF ADJUSTMENTS and Dane
County, Defendants,

WINGRA STONE COMPANY, Defendant-Appellant.

Supreme Court.

*No. 91–1894. Oral argument May 25, 1993.—Decided June 23, 1993.*

(Also reported in 501 N.W.2d 782.)

ABRAHAMSON, J., concurs.

For the plaintiff-respondent-petitioner there were briefs by *Frank J. Bucaida, Richard E. Petershack* and *Axley Brynelson,* Madison and oral argument by *Mr. Petershack.*

For the defendant-appellant there was a brief by *Bruce K. Kaufmann* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* Madison and oral argument by *Lawrence E. Bechler.*

JON P. WILCOX, J.   This is a review under sec. (Rule) 809.62, Stats., of an unpublished court of appeals' decision reversing an order of the Dane County Circuit Court, Judge Michael N. Nowakowski, which reversed a decision of the Dane County Board of Adjustment (Board). The Board affirmed a determination of the Dane County Zoning Administrator, William Fleck, that Wingra Stone Company be allowed to expand its mining operation onto an adjacent 40 acre parcel of land it owns, on the grounds that mining is a valid nonconforming use for that property. We conclude, as did the court of appeals, that the Board properly determined that mining is a valid nonconforming use of the property; therefore, we affirm.

Wingra Stone and its predecessors in interest (hereafter Wingra) owned 80 acres of land in the Town of Verona, Dane County, Wisconsin, during all times pertinent to this case. Wingra began mining operations on a portion of the land in 1967.

In 1968, Dane County adopted an ordinance providing in relevant part that:

All existing mineral extraction operations shall be deemed non-conforming uses and may be continued providing that they have been worked prior to the date of adoption of this ordinance and they have been registered with the County Zoning Supervisor within one year of the date of adoption of this ordinance.

In compliance with the ordinance, Wingra submitted to the Zoning Supervisor a written registration of all of its mining operations in Dane County including the entire 80 acres that is the subject of this case. Upon receipt of the registration list, the Dane County Zoning Department performed a verification process to determine if the registered land was actually being worked as a mine and qualified as a valid nonconforming use under the ordinance. For purposes of verification, the Zoning Department developed a form which broke the land down into quarter-quarters of sections, i.e. 40 acre parcels. The form which was completed for the Wingra property divided Wingra's 80 acres into two adjacent 40 acre parcels. An aerial photo was taken of the property. William Fleck, who was an employee of the Zoning Department at that time, performed a field study. The form indicates that there was photo and field evidence of mining on one of the 40 acre parcels known as the "Marty Pit." The form further indicates that no mining activity was occurring on the other 40 acre parcel which the parties refer to as the disputed property.

The form indicates that the Marty Pit was "accepted" and the disputed property was not "accepted." The meaning of the term "accepted" is disputed by the parties. However, it appears from the record that the failure to accept the disputed property was the Zoning Department's determination that the

property did not qualify for nonconforming use status and mining would not be permitted on that property because the property was not being mined prior to adoption of the ordinance. There is nothing in the record indicating that Wingra was informed of this determination by the Zoning Department.

There the matter rested until September of 1989, when Wingra asked the Zoning Administrator, William Fleck, to review the status of the 80 acre parcel. Wingra brought to Fleck's attention the published decision in *Sturgis v. Winnebago County Board of Adjustment,* 141 Wis. 2d 149, 413 N.W.2d 642 (Ct. App. 1987), which held that when contiguous parcels are owned by the same entity and excavation operations are in existence on part of the land, all land constituting an integral part of the operation is deemed "in use." Fleck's written determination concluded that Wingra is allowed a non-conforming mineral extraction status for its entire 80 acres. Fleck found that the Zoning Department's decision to limit nonconforming use status to the specific quarter-quarters in which mining was taking place in 1968 "was apparently only a policy decision, it was not included in the original ordinance and had not been included by any subsequent amendment."

During the interval between 1968 and 1989, a residential community developed adjacent to the disputed 40 acres. Petitioner, F. James Smart, is a property owner in the residential community. Smart appealed to the Board of Adjustment, Fleck's 1989 determination that Wingra could mine the disputed 40 acres as a nonconforming use. The Board affirmed Fleck's determination.

Pursuant to sec. 59.99(10), Stats., Smart sought certiorari review in the Dane County Circuit Court. The circuit court reversed the Board's decision, holding

that Wingra waived any right to assert a nonconforming use by failing to appeal in 1970 the Zoning Department's refusal to accept its registration for the disputed 40 acres.

Wingra appealed to the court of appeals. The court of appeals reversed. The court of appeals concluded that no law prevented Fleck from correcting a previous error by the Zoning Department. Relying on *Sturgis,* the court of appeals further concluded that, "Fleck and the board correctly allowed Wingra the opportunity to extend its mining operation to the previously unused, contiguous land, on the grounds that mining was a nonconforming use of that land before the ordinance was enacted in 1968."

We accepted Smart's petition for review and now affirm the court of appeals.

■

We review this case by applying the certiorari standard of review. Our review is limited to determining: (1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *Arndorfer v. Sauk County Board of Adjustment,* 162 Wis. 2d 246, 254, 469 N.W.2d 831 (1991).

The Board properly affirmed Fleck's determination that mining was a valid nonconforming use of Wingra's entire 80 acres. The Board proceeded under a correct legal theory in reaching its conclusion. The Board relied upon the applicable provisions of the 1968 Dane County ordinance, a prior decision of the Board of Adjustment and the *Sturgis* case.

Nothing in the 1968 ordinance limited the registration of mineral extraction operations to quarter-quarters or 40 acre parcels. Fleck's determination which was adopted by the Board properly points out that the ordinance did not support the Zoning Department's decision in 1969 to restrict approval for nonconforming use status to 40 acre parcels in which mineral extraction activity was located.

The Board also properly relied upon a decision it rendered on September 16, 1980, which interpreted the ordinance at issue in this case. In that decision, the Board concluded that "the intent of registration was to make possible the continuation of mineral extractions on the entire property owned by the registrant . . . ." Relying on a number of decisions from other jurisdictions which espoused the diminishing asset rule as was later adopted in Wisconsin by *Sturgis*, the Board concluded that limiting registration to 40 acre parcels without considering the area of deposits and the mode of operation was improper.

The Board properly applied *Sturgis* to this case. The fact situation in *Sturgis* was very similar to the instant case. In 1979, Winnebago County adopted an ordinance that provided for permits to be granted, as a matter of right, to all extraction operations existing at the time the ordinance was adopted. Conditional use permits were required for extensions of existing operations or creation of a new extraction operation. The core of the dispute in *Sturgis* was whether a 30 acre parcel, where extraction had started, and a 10 acre parcel, where it had not, would be considered one 40 acre parcel for the purpose of finding an existing use. The court held that "when a single owner has contiguous parcels on which an excavation operation is in existence, all land which constitutes an integral part of the operation

is deemed 'in use,' not withstanding the fact that a particular portion may not yet be under actual excavation." *Sturgis,* 141 Wis. 2d at 154.

The *Sturgis* court applied the diminishing asset rule which states:

> This is not the usual case of a business conducted within buildings, nor is the land held merely as a site or location whereon the enterprise can be conducted indefinitely with existing facilities. In a quarrying business the land itself is a mineral or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question and the nature of its operations. *We think that in cases of a diminishing asset the enterprise is "using" all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation.* It is in the very nature of such business that reserve areas be maintained which are left vacant or devoted to incidental uses until they are needed. Obviously, it cannot operate over an entire tract at once. (Emphasis in original).

*Sturgis,* 141 Wis. 2d at 153, *quoting County of DuPage v. Elmhurst-Chicago Stone Co.,* 165, N.W.2d 310, 313 (Ill. 1960). *Sturgis* is directly on point and the Board properly applied it in the instant case.

Based upon the foregoing law, it was reasonable for the Board to conclude that Wingra's entire 80 acres qualified for nonconforming mineral extraction status under the 1968 ordinance.

454

The Board was presented with evidence that the Zoning Department's decision to limit registration to 40 acre parcels was an arbitrary decision not called for by the ordinance. The Board could reasonably conclude from the evidence that the Zoning Department made a mistake in 1969 when it denied Wingra nonconforming use status for the disputed 40 acres. It was reasonable for the Board to correct this error.

█

Smart argues that Wingra waived its right to seek review of the zoning status of its property by failing to appeal in 1969 the Zoning Department's decision that the disputed 40 acres did not qualify as a nonconforming use. Smart asserts that *Jefferson County v. Timmel,* 261 Wis. 39, 51 N.W.2d 518 (1952) precludes Wingra from seeking a change in the zoning status of its property. We disagree.

In *Timmel,* a property owner used his property for retail purposes. The county adopted a zoning ordinance prohibiting retail uses on the owner's property. After adoption of the ordinance, the owner applied for a building permit to construct a new building to continue the prior retail use. The application for the building permit was denied and the owner did not appeal that denial. Instead, the owner applied for a new building permit for a residence, which was granted. Upon completion of the new building, the owner did not use it as a residence, but continued to use it for retail purposes. The county applied for and obtained an injunction prohibiting the retail use of the property. As a defense, the owner argued that there was no violation of the ordinance because retail use of the property was the continuance of a prior nonconforming use.

This court held that the statutory procedure set forth in sec. 59.99, Stats., for appeal from an adverse

ruling of an administrative officer to the board of adjustment is exclusive of all other remedies and must be exhausted before a party can resort to the courts for relief. *Timmel,* 261 Wis. 63–64. We concluded that the owner waived his right to claim nonconforming use status for the property by failing to appeal the denial of the first building permit. *Id.* 261 Wis. at 64.

*Timmel* is easily distinguished from the instant case. In *Timmel,* the owner was denied a permit to build a building for retail use. Instead of appealing the explicit decision that a retail business could not be conducted on the property, the owner attempted to avoid the decision by applying for a new permit to construct a building for a residence. The permit was granted with a special notation that the building could only be used as a residence. The owner then continued to conduct a retail business out of the new building in direct contravention of the express orders of the building permit.

In the instant case, Wingra did not intentionally violate the orders of the Zoning Department. There is nothing in the record indicating that Wingra ever received notice that the disputed 40 acres was denied nonconforming use status in 1969. Even assuming Wingra was so informed in 1969, Wingra never attempted to mine the land in violation of such a determination. In 1989, Wingra requested that Fleck review the status of its entire 80 acres because it believed the entire 80 acres qualified as a valid nonconforming use. No authority exists for the proposition that action or inaction by Wingra prevented Fleck from correcting a previous error of the Zoning Department. It is Fleck's 1989 decision allowing a nonconforming use on the disputed 40 acres that is the subject of this proceeding, not the Zoning Department's 1969 decision.

The doctrine of exhaustion of administrative remedies is not applicable in this case, because all steps in the administrative agency process were completed. The Zoning Administrator and the Board had an opportunity to perform their functions, to compile a factual record, to interpret and apply the ordinance, and to correct any errors they might have made.

■

Smart argues that *Sturgis* should not be applied retroactively to this case. We disagree. Courts generally apply the law as it is at the time of the decision, rather than at the time of the transaction underlying the lawsuit. *Bell v. County of Milwaukee.* 134 Wis. 2d 25, 31, 396 N.W.2d 328 (1986). "A decision is given prospective effect only when there are compelling judicial reasons for doing so." *Bell,* 134 Wis. 2d at 31.

■

We do not believe that there are any compelling judicial reasons for applying *Sturgis* prospectively only. Smart argues that many of the property owners in the residential community adjacent to the disputed 40 acres built homes believing that Wingra could not mine the property as a nonconforming use. While this may be true, we do not believe this rises to the level of a compelling reason for applying *Sturgis* prospectively. Any property owners who built homes adjacent to the disputed 40 acres did so knowing that Wingra owned the land and was mining the land adjacent to the disputed 40 acres. Further, they could have anticipated that even if Wingra was denied nonconforming use status, it would apply for a conditional use permit to mine the disputed 40 acres. Even if the residential property owners relied on the Zoning Department's 1969 determination that Wingra not be allowed nonconforming mineral extraction status for the disputed 40 acres,

they had no reason to believe that Wingra would not someday mine the land under a conditional use permit.

Finally, Smart argues that the doctrine of laches should be applied to prevent Wingra from mining the disputed 40 acres as a nonconforming use. We reject this argument.

The equitable doctrine of laches has been defined as:

> [A] recognition that a party ought not to be heard when he has not asserted his right for unreasonable length of time or that he was lacking in diligence in discovering and asserting his right in such a manner so as to place the other party at a disadvantage.

*Bade v. Badger Mut. Ins. Co.,* 31 Wis. 2d 38, 47, 142 N.W.2d 218 (1966). The elements of laches are: "(1) unreasonable delay, (2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and (3) prejudice to the party asserting the defense in the event the action is maintained." *Schafer v. Wegner,* 78 Wis. 2d 127, 132, 254 N.W.2d 193 (1977).

It is Smart's position that Wingra was not diligent in challenging the Zoning Department's 1969 denial of nonconforming use status for the disputed 40 acres. Smart argues that it was unreasonable for Wingra to delay until 1989 before seeking a review of the zoning status of its property. We reject this argument and conclude that the doctrine of laches is not appropriate in this case.

There is no evidence in the record that Wingra was ever informed in 1969 of a final decision by the Zoning Department that it could not mine the disputed 40

acres as a nonconforming use. Even if Wingra was informed of the Zoning Department's decision in 1969, it was not unreasonable for Wingra to accept that decision at that time. We can find no law suggesting that a property owner cannot request a review of the zoning status of his property at any time.

Smart and the other property owners in the residential community cannot reasonably argue that they lacked knowledge that Wingra might attempt to mine on the disputed 40 acres as a nonconforming use. The property owners knew or should have known when they purchased their land and built their homes that Wingra owned the entire adjacent 80 acres and was mining on a portion of it. The only reasonable assumption was that Wingra intended to mine the entire 80 acres.

Smart was not prejudiced by the Board's 1989 decision to allow Wingra to mine the disputed 40 acres as a nonconforming use. Zoning laws change from time to time. Zoning classifications are changed as land use plans are developed or redesigned. A person who purchases land in reliance upon current zoning restrictions on adjacent property acquires no right that the restrictions will not change. 1 Robert M. Anderson, American Law of Zoning 3d § 4.28 (1986). Smart's argument really boils down to the fact that he wishes to benefit from a mistake of the Zoning Department in 1969. The Zoning Department mistakenly believed the 1969 ordinance required it to break property down into quarter-quarters for determination of nonconforming use status. The Board's later correction of an error cannot be prejudicial to Smart.

We conclude that the diminishing assets rule was applicable in this case and the Board properly applied

the law in affirming the Zoning Administrator's determination that mining was a valid nonconforming use of Wingra's entire 80 acres.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J.   *(concurring).* I concur in the mandate only.