EDWARD KRAEMER & SONS, INC., Plaintiff-Appellant,

v.

SAUK COUNTY BOARD OF ADJUSTMENT, Defendant-
Respondent-Petitioner.

Supreme Court

No. 91–0886. *Submitted on briefs November 30,
1993.—Decided May 4, 1994.*

(Also reported in 515 N.W.2d 256.)

For the defendant-respondent-petitioner there was a brief by *Eugene R. Dumas* and *Sauk County Corporation Counsel*, Baraboo.

For the plaintiff-appellant there was a brief by *Lauri D. Morris, Richard L. Bolton* and *Stroud, Stroud, Willink, Thompson & Howard*, Madison.

HEFFERNAN, C.J.   This is a review of a published ˎdecision of the court of appeals, *Edward Kraemer & Sons, Inc. v. Sauk County Bd. of Adjust-*

*ment,* 175 Wis. 2d 168, 499 N.W.2d 211 (Ct. App. 1993), reversing an order of the Sauk County circuit court, Virginia A. Wolfe, Judge, that, after a sec. 59.99(10), Stats., review,[1] affirmed the Sauk County Board of Adjustment's (Board's) denial of a special exception permit to Edward Kraemer & Sons, Inc. (Kraemer) to extract minerals on a forty-acre parcel of land in Sauk County. The question we address on this review is whether the Board, in denying Kraemer's permit application, correctly interpreted and applied Sauk County ordinance sec. 7.04(1), which states that one purpose of the ordinances is "to provide for wise use of the county's resources" and sec. 7.04(2)(i)19.c.1(a)(iii), which requires the Board to consider the ability of a proposed mineral extraction plan "to avoid harm to the public health, safety and welfare". We conclude that the Board correctly determined that when deciding whether to grant the permit, ordinance secs. 7.04(1) and 7.04(2)(i)19.c.1(a)(iii) allowed it to consider the impact of the proposed operation on the Baraboo bluffs. Further, the Board correctly determined the limited scope of its authority to consider the harm to the bluffs—the Board explained that by denying the permit, it was giving Kraemer an opportunity to submit a more developed application describing how the company planned to implement its stated commitment to preserve a portion of the bluffs on its property. The Board's decision is valid as tested on certiorari. We reverse the decision of the court of appeals.

---

[1] Section 59.99(10), Stats. provides in relevant part:

Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment . . . may, within 30 days after the filing of the decision in the office of the board, commence an action seeking the remedy available by certiorari.

In January of 1990, Kraemer purchased forty acres of land in a portion of Sauk County zoned for agricultural use. The land is located at or near the lower narrows of the Baraboo bluffs, a land formation composed of quartzite rock. After purchasing the land, Kraemer applied to the Board for a special exception permit to conduct mineral extraction activities including excavating, removing, and processing crushed stone. After a hearing on January 25, 1990, the Board granted the permit to Kraemer, with conditions. However, the legal notice of this hearing was defective and the decision following the hearing was void.

The Board held a second hearing on February 22, 1990. Kraemer employees and other individuals who supported the permit spoke first. Ken Isenberger, a civil engineer employed by Kraemer, noted that the Baraboo bluffs region is a significant geological area. He explained that Kraemer had determined that the forty-acre site was a good location for quarrying because the property was adjacent to Kraemer's existing twenty-seven acre quarry. Isenberger said that Kraemer would not need to create a new opening for quarrying and start-up costs would be lower. Moreover, because the rock at the site rose in a series of terraces, quarrying could be started on level areas, making the operation safer.

Isenberger submitted a two-page operations plans and a three-page restoration plan. Isenberger described the proposed operations plan as a five year plan in which part of the forty acres would be quarried to an average depth of seventy-five feet. In the following five years, the same area would be quarried to an average depth of 150 feet. The restoration plan explained Kraemer's intent to cover and seed areas after excavation was completed. Isenberger addressed

several other issues, including concerns regarding dust, noise, water run-off, blasting techniques, and truck hauling.

Isenberger stated that Kraemer was willing to grant a scenic easement on the east bluff of the forty acres to an appropriate organization. In later testimony William Kraemer, another company representative, reiterated this offer and added, "[I]f there is some way that we can show you that we do intend to honor our commitment to preserve the bluff, we will do it."

The Board then heard testimony from approximately thirty people who opposed the permit. The opponents emphasized the geological and aesthetic significance of the Baraboo bluffs, and said they were concerned that the proposed mining would destroy a portion of the bluffs. Opponents were also concerned that mining would have an adverse effect on recreation and tourism in the area, and on property values, safety, and health.

On March 1, 1990, by a unanimous vote, the Board denied Kraemer's permit application. The Board explained at length its reasons for denying the permit. The Board acknowledged that the Sauk County ordinances did not authorize the Board to preserve all portions of the Ice Age Trail,[2] which runs through the Baraboo bluffs, in their existing state. However, the Board concluded that it had the authority to protect the public from harm that would result from "substantial desecration" of a portion of the Baraboo bluffs. For its authority, the Board relied on two sections of the Sauk County ordinances governing the agricultural district. Section 7.04(1) states that one purpose of the ordinance

---

[2] The Ice Age Trail, a trail designated by Congress as a national scenic trail, crosses Kraemer's forty acre property.

is "[t]o provide for wise use of the county's resources"; and sec. 7.04(2)(i)19.c.1(a)(iii) states that in granting a special exception permit for mineral extraction, the Board must consider:

> ability of the operation . . . to avoid harm to the public health, safety and welfare and to the legitimate interests of nearby properties.

The Board stated that the permit was provisionally denied to give Kraemer the opportunity to supplement its operations plan by showing how it would fulfill its stated commitment to preserve a portion of the bluffs. The Board declared:

> [T]he members of the Board believe that the result of this decision is merely to respond to the statement made by Mr. William Kraemer at the public hearing that "If [there is] some way we can show you that we do intend to honor our commitment to preserve the bluff, we will do it." As both Mr. Kraemer and Mr. Isenberger, acting in the capacity of chief spokesperson for Kraemer & Sons, repeatedly indicated, the company is willing to make a documented commitment to not harm what everyone seems to recognize as an historic and valuable natural landmark.

The Board added that it was willing to consider a more detailed application in the future. The Board also stated that its decision was based only on the evidence presented at the public hearing and on a site visit on February 27th.

Pursuant to sec. 59.99(10), Stats., Kraemer commenced an action in circuit court for certiorari review of the Board's decision. The circuit court affirmed the decision of the Board. On appeal, the court of appeals reversed. In its reasoning, the court of appeals stated

that "activities subject to special exception permits are permitted uses in the zoning district in which they are located." *Edward Kraemer & Sons, Inc.*, 175 Wis. 2d at 174. Further, Sauk county ordinance sec. 7.04(2)(i)19.c.1(d) provides: "The board shall attach such conditions to each approved application as are necessary to assure that the operation will satisfy the standards [that must be met before a mineral extraction permit can be granted] . . .." Interpreting the ordinance language in light of its understanding of special exception permits, the court of appeals concluded that it was the Board's responsibility to fashion conditions so that it could grant the permit to Kraemer. *Id.* at 173–74. The court of appeals apparently believed that the mineral extraction permit had to be granted and if conditions were necessary to ensure compliance with the ordinance, the Board was obligated to fashion them.

■ Because the circuit court took no new evidence when it conducted certiorari review of the Board's decision, this court applies the traditional common law certiorari standard of review. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd. of Adjustment*, 131 Wis. 2d 101, 122, 388 N.W.2d 593 (1986). Depending on which facet of the Board's action is being challenged, common law certiorari review requires us to consider one or more of the following: "(1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *Smart v. Dane County Bd. of Adjustments*, 177 Wis. 2d

7

445, 452, 501 N.W.2d 782 (1993). Under common law certiorari review this court reviews the record of the Board. *State ex rel. Harris v. Annuity & Pension Bd., Employees' Retirement Sys. of Milwaukee*, 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979).

The first step we take on certiorari review is to determine which facet of the Board's action is being challenged. We then apply the portion of certiorari review applicable to that facet of the Board's action. Regardless of which portion of certiorari review is applied, the Board's decision is entitled to a presumption of validity. *Snyder v. Waukesha County Zoning Board of Adjustment*, 74 Wis. 2d 468, 476, 247 N.W.2d 98 (1976).

The present case involves a challenge to the Board's choice of, and application of, law. Kraemer claims that the Board could consider only the specific standards in the ordinance, and argues that the Board did not base its decision on these standards. Kraemer argues that landmark preservation and degree of public opposition are not standards that the Board may consider. Because this is a challenge to the Board's choice of, and application of, law, we look to the second portion of certiorari review—whether the Board proceeded on a correct theory of law.[3] A board proceeds on

---

[3] Kraemer sets forth arguments regarding each of the other three parts of certiorari review—whether the Board kept within its jurisdiction, whether the Board's action was arbitrary or unreasonable, and whether the decision was reasonable in light of the evidence. However, Kraemer's arguments with respect to each of these additional parts of certiorari review merely repeat its initial argument that the Board relied on an incorrect theory of law. For instance, Kraemer states that the Board's action was

8

a correct theory of law when it relies on the applicable ordinances and cases and applies them properly. *See Smart,* 177 Wis. 2d at 452–54.

Because the forty acre parcel was part of an agricultural district, sec. 7.04 of the Sauk County ordinances applies to this case. Section 7.04(1) sets forth the purposes of the ordinance, including "[t]o provide for wise use of the county's resources." Section 7.04(2)(i)1–20 contains special exception uses that are permitted in the agricultural district if the board finds that certain conditions are met. Board approval of these special exception uses must be consistent with the general purpose of the ordinance. Section 7.04(2)(i). The ordinance provides that board approval shall be based on evidence showing that the proposed use is desirable from a public interest standpoint, considering the factors of smoke, dust, noxious or toxic gases and odors, noise, vibration, operation of heavy machinery, heavy vehicular traffic and increased traffic on the public streets. *Id.* The factors the board may consider are not limited to those enumerated. *Id.*

Ordinance sec. 7.04(2)(i)19 imposes additional conditions for the grant of a special exception permit to engage in mineral extraction activities. The applicant must submit an operations plan and a reclamation plan. Section 7.04(2)(i)19.a, b, c.1(b)–(c). Section 7.04(2)(i)19.c. provides:

> 1. . . . In order to grant a special exception permit, the board must find:

arbitrary and unreasonable because it was not based on the correct legal standards. Thus, our analysis of whether the Board proceeded under a correct theory of law will address all of Kraemer's arguments and we need not address the other portions of certiorari review.

9

(a) That mineral extraction and or processing is an appropriate land use at the site in question, based upon consideration of such factors as:

(i) existence of mineral deposits; and

(ii) proximity of the site to transportation facilities and to market areas; and

(iii) ability of the operation, as described in the proposed operations plan, to avoid harm to the public health, safety and welfare and to the legitimate interests of nearby properties.

In denying the permit, the Board relied on two portions of the ordinance: sec. 7.04(1), stating that the general purpose of the ordinance is to provide for wise use of the county's resources, and sec. 7.04(2)(i)19.c.1(a)(iii), stating that the Board must determine whether the operation will "avoid harm to the public health, safety and welfare". It was on the basis of these sections that the Board concluded it had the authority "to protect the public from the harm that would be involved in the substantial desecration" of a portion of the Baraboo bluffs.

We agree with the Board's interpretation of its authority under ordinance secs. 7.04(1) and 7.04(2)(i)19.c.1(a)(iii). The purpose of "provid[ing] for wise use of the county's resources," set forth in sec. 7.04(1), is a general statement of purpose contained at the beginning of the ordinances governing agricultural districts. A zoning board may look to a statement of purpose as a guide when evaluating an applicant's proposed operations plan. *Smith v. City of Brookfield*, 272 Wis. 1, 7–8, 74 N.W.2d 770 (1956). Thus, this statement of purpose allowed the Board, while evaluating

the operations plan, to consider the impact of Krae-mer's proposal on the Baraboo bluffs—an important natural resource in Sauk County.

In addition, sec. 7.04(2)(i)19.c.1(a)(iii), the "public health, safety and welfare" standard, is a general stan-dard that provides the Board with flexibility and discretion to consider how a proposed special exception could affect the public welfare. The standard allows the Board to consider potential harm to individuals living near the proposed mineral extraction site, including exposure to health hazards from the dust and threats to safety posed by blasting. The public health, safety and welfare standard is also broad enough to enable the Board to consider the generalized effects on the public welfare that concerned the Board in this case—harm to the public that would result from partial destruction of a natural area that both permit support-ers and opponents agree is of great geological importance.

We are persuaded that the Board correctly deter-mined the scope of its authority under ordinance secs. 7.04(1) and 7.04(2)(i)19.c.1(a)(iii) because the Board clearly explained the limits of its authority to consider the impact of the proposed mining on the Baraboo bluffs and to consider whether partial destruction of the bluffs would harm the public welfare. The Board stated that it was not deciding that Kraemer did not have the right to use property that Kraemer owns. The Board correctly explained that it was not authorized to preserve all portions of the Ice Age Trail in their pre-sent state, adding that such preservation could only occur through government purchase of the property. Moreover, the Board correctly stated that the Sauk County ordinances did not provide the Board authority to impose a moratorium on applications for special

exception permits. In support of this statement, the Board reasoned that the ordinance establishes the uses that may be the subject of requests for special exception permits and acknowledged that it cannot refuse to consider an application that falls within those established categories.

We are further persuaded that the Board correctly interpreted the scope of its authority under ordinance secs. 7.04(1) and 7.04(2)(i)19.c.1(a)(iii) because the action the Board took was limited. In the decision denying the permit, the Board did no more than suggest that Kraemer explain how it would implement action the company had offered to take. The Board stated that denial of the permit was a reaction to a situation in which Kraemer was willing to show its commitment to preserving the bluff, but had not yet done so. The Board stated that Kraemer was willing to convey an easement to a portion of the bluffs to an appropriate organization. However, the Board decided that it did not have enough information in the record to grant the permit on the condition that the easement be conveyed. Therefore, the Board suggested that if Kraemer wanted to grant an easement the company should do so privately and the parties could then stipulate to the grant when Kraemer submitted a renewed application. The Board added that its decision did not "indicate a prejudgment . . . against favorable consideration of a more developed application in the future."

Kraemer argues that the Board can consider only the specific, objective standards in the ordinance. He then sets forth what he believes are the only specific standards: whether the site is feasible from an economic perspective,[4] whether the operations plan

---

[4] This standard is not explicitly set forth in the ordinance.

demonstrates that harm to neighboring properties will be avoided, and whether a reclamation plan has been submitted. Kraemer apparently does not believe that ordinance secs. 7.04(1), stating that one purpose of the ordinances is to "provide for wise use of the county's resources", and sec. 7.04(2)(i)19.c.1(a)(iii), requiring that the Board consider "harm to the public health, safety and welfare", are specific enough to be standards for the Board's consideration. Kraemer points out that landmark preservation is not a standard listed for consideration in the ordinance. Therefore, according to Kraemer, the board did not have authority to consider the impact of the proposed operation on the bluffs when it deliberated on whether to grant the permit.

To support its interpretation of the standards the Board can consider, Kraemer argues that special exceptions, also called "conditional uses", are expressly permitted when the standards established in the ordinance are met. *See State ex rel. Skelly Oil Co. v. Common Council of Delafield*, 58 Wis. 2d 695, 701, 201 N.W.2d 585 (1973). Kraemer further asserts that these standards must be sufficiently specific to withstand attack on the grounds that they constitute an unconstitutional delegation of legislative authority. *See Gorham v. Town of Cape Elizabeth*, 625 A.2d 898, 900 (Me. 1993).

Kraemer's argument that the Board can consider only specific standards is incorrect. The Board cannot ignore any standards set forth in the ordinance. *See* sec. 59.99(1), Stats. (stating that a county board of supervisors may provide for the appointment of a board of adjustment that may make special exceptions to the terms of a county ordinance "in accordance with general or specific rules therein contained"). Because ordinance secs. 7.04(1) and 7.04(2)(i)19.c.1(a)(iii) are

13

explicit criteria, the Board must consider them when determining whether to grant a mineral extraction permit. Indeed, the Board would have been proceeding contrary to the law had it failed to consider them.

Kraemer may be arguing that the county board of supervisors can promulgate only specific standards. This argument fails as well. An ordinance standard governing special exceptions is not impermissible because it is general in nature. Section 59.99(1), Stats., explicitly provides that a board of adjustment may make special exceptions to an ordinance "in accordance with general or specific rules" (Emphasis added). Explanation for use of general special exception standards is set forth in 3 Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning* § 41.11, at 41–49 (4th ed. 1993):

> [G]eneralized standards are acceptable in most jurisdictions. The purpose of the special exception-conditional use technique is to confer a degree of flexibility in the land use regulations. This would be lost if overly detailed standards covering each specific situation in which the use is to be granted or, conversely, each situation in which it is to be denied, were required to be placed in the ordinance.[5]

Thus, the mere fact that the "wise use of the county's resources" and "public health, safety and welfare" stan-

---

[5] General standards are a common feature of zoning ordinances or enabling legislation in many states. *See, e.g., Tustin Heights Ass'n v. Bd. of Supervisors of Orange County*, 339 P.2d 914, 918, 924 (Cal. App. 1959); *Davis v. Richardson*, 507 S.W.2d 446, 447, 449 (Ky. 1974); *Fratantuono v. Zoning Bd. of Review of Cranston*, 159 A.2d 378, 381–383 (R.I. 1960).

dards are general in nature does not impair the validity of these portions of the ordinance.

Although Kraemer does not directly assert that the general standards are unconstitutional, he suggests as much when he argues that standards must not be so general as to be an impermissible delegation of legislative authority. In *Smith v. City of Brookfield*, 272 Wis. at 7–10, we upheld the constitutionality of a zoning ordinance with standards similar to those at issue in the present case. Town of Brookfield ordinance sec. 7 provided in relevant part:

> (a)  Use regulations. . . . In agricultural districts no buildings or lands shall be used . . . except for one or more of the following uses:
> 4.  For uses enumerated below, providing the location and plan of operation have been submitted to and approved by the board of appeals after recommendation of the planning commission and after public hearings in the matter: . . . sand and gravel pits . . ..

*Id.* at 3–4.

The preamble to the entire Brookfield zoning ordinances stated that a comprehensive zoning plan was necessary "to provide adequate light, pure air, and safety from fire and other dangers, to conserve the taxable value of land and buildings throughout the township, to avoid congestion in the public streets and highways and to promote the public health, safety, comfort, morals, and welfare." *Id.* at 3.

Smith challenged the constitutionality of Brookfield ordinance sec. 7(a)4 on the grounds that it provided insufficient guides to evaluate applications for sand and gravel pit permits. We determined that the ordinance was constitutional because the purposes

15

in the preamble provided guidelines for the board to use when evaluating the proposed plan of operation submitted in the permit application. *Id.* at 7–8. The standards Kraemer considers inappropriate, requiring that the board "provide for wise use of the county's resources" and consider harm to "public health, safety and welfare" when evaluating the proposed operations plan, are no more general than those deemed adequate in *Smith*. We conclude that these standards do not constitute an unconstitutional delegation of legislative authority.

To avoid a potential for confusion in future cases, we believe it is necessary to address a portion of the court of appeal's decision that is in error. The court of appeals misinterpreted ordinance sec. 7.04(2)(i)19.c.1(d), which states:

> The board shall attach such conditions to each approved application as are necessary to assure that the operation will satisfy the standards set forth above. (Emphasis added.)

The court of appeals stated that under this standard, if the Board determined that conditions were necessary to protect the bluffs, then it was the Board's duty to formulate such conditions. The reasoning of the court of appeals suggests that because the application was for a special exception permit, under ordinance sec. 7.04(2)(i)19.c.1(d) the Board had the burden to fashion conditions so that it could grant the permit to Kraemer.

The Board did not have the burden of formulating conditions to enable Kraemer to obtain a special exception permit. A special exception use is only a permitted use when the standards prescribed in the ordinance are met. The applicant, not the Board, has the burden

16

of showing that the permit meets these standards.[6] Here, Kraemer did not meet its burden. Once the Board decides to approve an application, ordinance sec. 7.04(2)(i)19.c.1(d) enables the Board to fashion additional conditions to ensure compliance. This provision does not shift the burden to the Board to fashion conditions that would enable the applicant to obtain the permit.

The only facet of the Board's actions that was questioned on certiorari was its choice of, and application of, law. We conclude that the Board correctly interpreted and relied on the authority granted to it by the applicable Sauk County ordinances. Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—Decision reversed.

---

[6] Generally an applicant for a special exception permit has the burden of showing that the use meets the ordinance standards. Ziegler, *3 Rathkopf's The Law of Zoning and Planning* § 41.13, at 41–75. *See also Cosmopolitan Nat'l Bank of Chicago v. Zoning Bd. of Appeals of Chicago*, 380 N.E.2d 940, 942 (Ill. App. 1978); *Johnson v. Bd. of Adjustment of West Des Moines*, 239 N.W.2d 873, 885 (Iowa 1976); *Application of Volunteers of America, Inc.*, 749 P.2d 549 (Okla. 1988).