Kent SCHROEDER, and James Gregorius, Dane County Zoning Administrator, Plaintiffs-Respondents,†

v.

DANE COUNTY BOARD OF ADJUSTMENT, Defendant,

Jon HALVERSON, Defendant-Appellant.

Court of Appeals

*No. 98–3615. Submitted on briefs April 1, 1999.—Decided May 13, 1999.*

(Also reported in 596 N.W.2d 472.)

†Petition to review denied.

On behalf of the defendant-appellant, Jon Halverson, the cause was submitted on the briefs of *Thomas P. Heneghan* of *Michael Best & Friedrich LLP* of Madison.

On behalf of the plaintiff-respondent, Kent Schroeder, the cause was submitted on the brief of *Leighton W. Boushea* of *Boushea, Segall, Joanis & Johnston* of Madison.

On behalf of the plaintiff-respondent, James Gregorius, Dane County Zoning Administrator, the cause was submitted on the brief of *David R. Gault*, assistant corporation counsel.

Before Vergeront, Roggensack and Deininger, JJ.

VERGERONT, J.    This appeal concerns the interpretation and application of DANE COUNTY ORDINANCES § 10.191(6), which relates to the registration of nonconforming mineral extraction operations. The Dane County Board of Adjustment interpreted the ordinance to permit, under the diminishing asset rule, operation on a contiguous parcel belonging to the owner of the operation, even though that parcel was not listed on the record of registered operations. Jon Halverson, the owner of the operation, appeals the trial court's order, which reversed the board's decision and affirmed the decision of the zoning administrator that the ordinance does not permit application of the diminishing asset rule beyond the parcel described in the record of registered operations. We conclude that the board correctly interpreted the ordinance, and we therefore reverse the trial court.

## BACKGROUND

Halverson has owned the sand and limestone gravel quarry in the Town of Albion since 1997, when he purchased it from Alvin Kaupanger. Alvin and his brother Oliver used the site as a quarry since at least 1966. In 1968, Dane County adopted DANE COUNTY ORDINANCES § 10.191(6) which provides:

(6) Mineral extraction operations which existed prior to 1969 and were registered with and approved by the Dane County Zoning Administra-

tor shall be considered nonconforming uses in accordance with s. 10.21.[1]

[1] DANE COUNTY ORDINANCES § 10.21 provides in part:

10.21 **NONCONFORMING USES.** (1)(a) The lawful use of a building or premises existing at the time of adoption of this ordinance may be continued as a nonconforming use, but if such nonconforming use shall be discontinued for a period of one (1) year, such nonconforming use will be deemed to have terminated and any future use shall be in conformity to the provisions of this ordinance except as otherwise provided by this ordinance.

(b)   No building or premises used as a nonconforming use shall be added to or structurally altered so as to increase the facilities for such nonconforming use.

(c)   Mineral extraction operations which existed prior to 1969 and were registered with and approved by the Dane County Zoning Administrator shall be considered nonconforming uses.

(d)   Mineral extraction sites that were registered as nonconforming sites as provided by this ordinance shall not be considered abandoned or discontinued if the site is inactive for more than one year.

The county is authorized to enact this provision by § 59.69(10), STATS., which provides:

(10)   NONCONFORMING USES.

(a)   An ordinance enacted under this section may not prohibit the continuance of the lawful use of any building or premises for any trade or industry for which such building or premises is used at the time that the ordinances take effect, but the alteration of, or addition to, or repair in excess of 50% of its assessed value of any existing building or structure for the purpose of carrying on any prohibited trade or new industry within the district where such buildings or structures are located, may be prohibited. The continuance of the nonconforming use of a temporary structure may be prohibited. If the nonconforming use is discontinued for a period of 12 months, any future use of the building and premises shall conform to the ordinance.

. . .

3.   The officer designated under subd. 1. or 2. shall cause a record to be made immediately after the enactment of an ordinance or amendment thereto, or change in district boundary, approved by the town board, of all lands, premises and buildings in the town used for purposes not conforming to the regulations applicable to

(Footnote added.) On April 10, 1969, Oliver Kaupanger sent the Dane County Zoning Department a letter stating that he was providing "information to register quarries now being worked by me." The letter gave Kaupanger's name as the landowner; Albion as the township; Section 6, NW1/4-SE1/4 as the section and quarter-quarter; two acres as the acreage; quarry as the type of operation; and September 1966 as the date the operation was "first worked." The records of the county show that Kaupanger's operation was registered as a mineral extraction operation as of April 16, 1969. That record, entitled "Registration of Mineral Extraction Operations," contains a list of the operations, with a legal description and owner name next to each operation, and next to some, the date first worked. The Kaupanger operation is listed next to the township, quarter and section number and the date first worked as provided by Kaupanger in his April 10, 1969 letter.

Halverson is in the trucking business, and, in particular, the business of hauling sand and gravel for the construction trade. He asserts that he purchased the property from Kaupanger based upon its status as a legal non-conforming mineral extraction operation with the intention of continuing the operation as part

---

the district in which they are situated. The record shall include the legal description of the lands, the nature and extent of the uses therein, and the names and addresses of the owner or occupant or both. . . .

(c) The board shall prescribe a procedure for the annual listing of nonconforming uses, discontinued or created, since the previous listing and for all other nonconforming uses. . . .

(d) Paragraphs (b) and (c) shall not apply to counties issuing building permits or occupancy permits as a means of enforcing the zoning ordinance or to counties which have provided other procedures for this purpose.

of his business, and he has done so.[2] These assertions are not disputed by the respondents. The property Halverson purchased from Kaupanger consists of most but not all of the NW1/4-SE1/4 of Section 6 and contiguous parcels in the quarter-quarters to the south, east, north and northwest. On September 3, 1997, the Dane County Zoning Department posted a stop work order on Halverson's operation for exceeding the boundary of the registered non-conforming use. At that time the quarry was operating in a portion of the NW1/4-SE1/4 and a contiguous portion of the SW1/4-NE1/4. In response to Halverson's objection to the stop work order, the Dane County Assistant Corporation Counsel responded on behalf of the zoning administrator that the stop work order was proper because it covered the area north of the "registered [40 acre] area."

Halverson appealed the zoning administrator's interpretation of the ordinance to the Dane County Board of Adjustment. At the hearing, Kent Schroeder, a neighboring landowner, spoke against Halverson's appeal. Halverson's attorney presented a written legal argument supporting his interpretation of the ordinance. The board concluded that the zoning administrator's "[i]nterpretation of non-conforming mineral extraction sites being limited to the registered area only, is ruled invalid." The board made the following "finding of fact" supporting its conclusion:

1). Appellant's property includes a 40 acre registered non-conforming mineral extraction site.

---

[2] These assertions are contained in Halverson's notice of appeal and appeal filed from the zoning administrator's decision to the board.

2). Appellant has expanded mining outside of registered area and Zoning Administrator has placed a "Stop Work Order" on expanded area.

3). Appellant has claimed "Diminishing Asset Rule" applies, also quoted is Smart v. Dane County an [sic] Sturgis v. Winnebago County and other examples of supporting case law.

4). Zoning Administrator's Interpretation is that "Diminishing Asset" applies but applies to registered area.

5). The 1968 Mineral Extraction Ordinance allowed those parcels utilized for mining to be registered with Dane County and thereby exempt from future restriction.

Schroeder and the zoning administrator sought review by certiorari of the board's decision pursuant to § 59.694(1), STATS. The trial court agreed with their arguments. It found that Kaupanger registered a forty acre area as an existing mineral operation under DANE COUNTY ORDINANCES § 10.191(6) and concluded that only that area was a legal non-conforming use. The court acknowledged that the diminishing asset rule allows expansion of mineral extraction operations but concluded that the expansion under that rule was limited to the area registered as a non-conforming use, that is, the forty acres.

## DISCUSSION

On this appeal we review the decision of the Dane County Board of Adjustment, just as the circuit court did, and not the circuit court's decision. *See Klinger v. Oneida County*, 149 Wis. 2d 838, 845 n.6, 440 N.W.2d 348, 351 (1989). Our scope of review is limited to four questions: (1) whether the tribunal stayed within its

jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable, representing its will instead of its judgment; and (4) whether the evidence was such that it might reasonably have made the determination under review. *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 24, 498 N.W.2d 842, 846 (1993). Schroeder and the zoning administrator assert that the board did not act according to law because it interpreted the DANE COUNTY ORDINANCES §§ 10.191(6) and 10.21 incorrectly and applied the diminishing asset rule to "nullify" that ordinance.

The diminishing asset rule was first recognized in Wisconsin in *Sturgis v. Winnebago County Bd. Of Adjustment*, 141 Wis. 2d 149, 413 N.W.2d 642 (Ct. App. 1987). The court in *Sturgis* quoted the following excerpt from an Illinois Supreme Court opinion that explained the rule:

> This is not the usual case of a business conducted within buildings, nor is the land held merely as a site or location whereon the enterprise can be conducted indefinitely with existing facilities. In a quarrying business the land itself is a mineral or resource. It constitutes a diminishing asset and is consumed in the very process of use. Under such facts the ordinary concept of use, as applied in determining the existence of a nonconforming use, must yield to the realities of the business in question and the nature of its operations. *We think that in cases of a diminishing asset the enterprise is "using" all that land which contains the particular asset and which constitutes an integral part of the operation, notwithstanding the fact that a particular portion may not yet be under actual excavation.* It is in the very nature of such business that reserve areas be maintained which are left vacant or

devoted to incidental uses until they are needed. Obviously, it cannot operate over an entire tract at once.

*Sturgis*, 141 Wis. 2d at 153, 413 N.W.2d at 643–44 (quoting *County of DuPage v. Elmhurst-Chicago Stone Co.*, 165 N.E.2d 310, 313 (Ill. 1960) (emphasis added)).

In *Sturgis*, Winnebago County adopted an ordinance providing that a permit would be granted as a matter of right to all existing mineral extraction operations, and conditional use permits would be required for extension of existing operations and new extraction operations. *Id.* at 151, 413 N.W.2d at 642–43. The zoning administrator determined that the owner's thirty-acre parcel where extractions were then taking place, and ten-acre contiguous parcel on which extractions had never taken place, were both existing operations; the Winnebago County Board of Adjustment affirmed. *Id.* at 151, 413 N.W.2d at 643. In applying the diminishing asset rule and concluding the board's decision was reasonable, the court stated:

> The relevant inquiry is 4X Corporation's intent and ownership of the property coupled with the unique use of extraction. Prior to the adoption of the ordinance, 4X Corporation owned both parcels of land and intended to extract minerals from both. As both parcels had been zoned M–3, it was reasonable for the board to consider the area as one parcel for the purpose of determining the extent of existing operations.

*Sturgis*, 141 Wis. 2d at 152, 413 N.W.2d at 643. The court rejected Sturgis' argument that "existing use" must be active rather than intended use, because that ignored a "basic fact of the extraction process." *Id.* at 153, 413 N.W.2d at 643.

332

Schroeder and the zoning administrator contend that the Dane County ordinance requires the landowner to register, and the zoning administrator to approve, the area that the landowner intends to use in its mineral extraction operations, and that area is the limit of the lawful non-conforming use: the diminishing asset rule permits expansion within that area, but not beyond. In their view, the board's decision renders the registration and approval requirement of the ordinance meaningless and is inconsistent with the principles underlying non-conforming uses.

In interpreting an ordinance, the rules of statutory construction apply. *Marris*, 176 Wis. 2d at 32, 498 N.W.2d at 850. The purpose of all such construction is to discern the intention of the legislative body. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 281, 548 N.W.2d 57, 60 (1996). We begin with the language of the ordinance and, if that is plain, we apply that language to the facts at hand and do not look beyond the language to ascertain its meaning. *See id.* If the language is ambiguous, that is, if there is more than one reasonable interpretation, then we consider the scope, history, context, subject matter and object of the ordinance. *Id.* at 282, 548 N.W.2d at 60. Whether an ordinance is ambiguous is a question of law, which we review de novo. *See Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 822, 512 N.W.2d 216, 218 (Ct. App. 1994).

Although a court is not bound by a board of adjustment's interpretation of an ordinance, it may give varying degrees of deference to that interpretation, depending on the circumstances. *Marris*, 176 Wis. 2d at 33, 498 N.W.2d at 850. Halverson argues that we should defer to the board's interpretation of the ordi-

nance, while the respondents contend that we should not, but should construe the ordinance de novo. However, when the language of an ordinance is not ambiguous, the degree of deference does not affect the court's analysis. An agency's construction that is consistent with the plain language is correct under any level of deference, *see Knight v. LIRC*, 220 Wis. 2d 137, 155, 582 N.W.2d 448, 456 (Ct. App. 1998), and an agency's interpretation that is inconsistent with plain language is not followed by the court even if great weight is accorded the agency's construction. *See UFE Inc.*, 201 Wis. 2d at 287, 548 N.W.2d at 62.[3] Another way of phrasing this principle is that the board's or agency's interpretation is an extrinsic aid that we consider only when the language of the ordinance or statute supports two reasonable constructions. *See id.* at 283, 548 N.W.2d at 61. Because we conclude that the plain language of the ordinance does not require that the area of intended use for mineral extraction operations be registered and approved by the zoning administrator, we need not further consider the issue of deference to the board's interpretation.

The language of DANE COUNTY ORDINANCES §§ 10.191(6) and 10.21(1)(c) establish three requirements for a non-conforming use. The mineral extraction operation must: (1) have existed prior to

---

[3] In contrast, when a statute or ordinance is ambiguous, the level of deference does affect the outcome, because if we give no deference, we decide de novo which interpretation is more reasonable; if we accord due deference, we accept the agency's interpretation as long as another interpretation is not more reasonable; and if we accord great deference, we accept the agency's interpretation as long as it is reasonable, even if another interpretation is more reasonable. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 285–87, 548 N.W.2d 57, 62 (1996).

1969, (2) be registered with the Dane County Zoning Administrator, and (3) be approved by the zoning administrator. Neither § 10.191(6) nor § 10.21(1)(c) make any reference to the intended area of expansion of the operation, whether it must be registered, or how it is to be determined and approved by the county. The ordinance sections do not refer to registration of "area" at all, but only to registration of "operations."[4]

Although the respondents contend the ordinance itself plainly requires registration of the area of intended use, they are apparently relying on the list of "Registration of Mineral Extraction Operations" in support of their argument that the ordinance requires a "registered area." However, as we have already indicated, the interpretation of an ordinance by those charged with enforcing it is an appropriate consideration only in interpreting an ambiguous ordinance. *See UFE Inc.*, 201 Wis. 2d at 283, 548 N.W.2d at 61. But even if, for purposes of discussion, we look beyond the language of the ordinance to the circumstances of the registration and approval of Kaupanger's operation, we cannot conclude those support the respondents' interpretation of the ordinance. Neither Kaupanger's application for registration nor the record of registered operations indicates that the applicant must designate or register the area in which he intends to conduct the operations in the future or the area to which the nonconforming use will be limited. Kaupanger's letter appears to be following a form in providing the information and gives the number of acres—presumably the number of acres on which the extraction operation was then occurring—and the quarter-quarters on which

---

[4] DANE COUNTY ORDINANCES § 10.21(d) refers to mineral extraction "sites" rather than mineral extraction "operations," because subsec. (d) addresses the inactivity of the operations.

that acreage was located. There is no mention of area of intended use or expansion.

The same is true of the record of registered operations. Nothing in that record indicates that the quarters and sections, or quarter-quarters and sections, next to the name of the owner is the extent of the area that the county has approved for non-conforming use: those descriptions could also be reasonably interpreted to simply designate the location of the operations. In this regard, we note that § 59.69(10)(b)3, STATS., which requires with certain exceptions, a record of all uses not conforming to the regulations applicable to the particular district, provides that the "record shall include the legal description of the lands, the nature and extent of the uses therein, and the names and addresses of the owner or occupant or both." Finally, the complaint for certiorari review filed by the respondents states that Halverson's predecessor "registered a particular two acre site," raising the question as to whether the zoning administrator has had a consistent approach to what is "registered" under the ordinance.

The respondents argue that the decision in *Smart v. Dane County Bd. of Adjustments*, 177 Wis. 2d 445, 501 N.W.2d 782 (1993), supports their view that the ordinance requires the area of intended use to be registered and approved. We do not agree. In *Smart*, when Wingra Stone submitted a written registration of its existing operations upon the passage of DANE COUNTY ORDINANCES § 10.191(6), it included the description of an eighty-acre parcel. *Id.* at 450, 501 N.W.2d at 783. However, the zoning department "accepted" only forty acres for registration. *Id.* Apparently pursuant to a policy the department had adopted to implement the ordinance, it divided the eighty acres into two forty-

acre parcels, determined that mining was occurring on only one, and accepted registration on only that one. Twenty-one years later, Wingra asked the zoning administrator for a review of the status of the eighty-acre parcel in view of *Sturgis. Id.* at 451, 501 N.W.2d at 784. The administrator determined that Wingra was entitled to non-conforming mineral extraction status for all eighty acres, concluding that "the Zoning Department's decision to limit nonconforming use status to the specific quarter-quarters in which mining was taking place in 1968 'was apparently a policy decision, it was not included in the original ordinance and had not been included by any subsequent amendment.' " *Id.*

The board of adjustment affirmed, and a neighboring residential property owner sought review by writ of certiorari. The supreme court affirmed this court's decision in Wingra's favor, concluding that the board had proceeded under a correct legal theory in applying the ordinance, a prior decision of the board indicating the intent of the ordinance, and the holding of *Sturgis.* The court stated:

> Nothing in the 1968 ordinance limited the registration of mineral extraction operations to quarter-quarters or 40 acre parcels. Fleck's [zoning administrator] determination which was adopted by the Board properly points out that the ordinance did not support the Zoning Department's decision in 1969 to restrict approval for nonconforming use status to 40 acre parcels in which mineral extraction activity was located.
>
> The Board also properly relied upon a decision it rendered on September 16, 1980, which interpreted the ordinance at issue in this case. In that decision, the Board concluded that "the intent of registration was to make possible the continuation

of mineral extractions on the entire property owned by the registrant . . . ." Relying on a number of decisions from other jurisdictions which espoused the diminishing asset rule as was later adopted in Wisconsin by *Sturgis*, the Board concluded that limiting registration to 40 acre parcels without considering the area of deposits and the mode of operation was improper.

*Smart*, 177 Wis. 2d at 453, 501 N.W.2d at 784–85.

The court went on to state that the board correctly applied the holding in *Sturgis* that "when a single owner has contiguous parcels on which an excavation operation is in existence, all land which constitutes an integral part of the operation is deemed 'in use,' notwithstanding the fact that a particular portion may not yet be under actual excavation." *Smart*, 177 Wis. 2d at 453–54, 501 N.W.2d at 785.

We acknowledge that Wingra Stone, unlike Halverson, identified in its registration the quarter-quarters at issue, but we do not read *Smart* as interpreting the ordinance to require that. The summary of facts in *Smart* does not indicate that the county required that the area of intended use be indicated by the applicant or that Wingra designated the disputed forty-acre parcel as the area of intended use. And the court's reference to the intent of the ordinance—to "make possible the continuation of mineral extractions on the entire property owned by the registrant," *id.* at 453, 501 N.W.2d at 785—does not support the respondents' position that the intent of the ordinance is to limit the expansion of mineral extraction operations to only that area designated in the registration. The *Smart* court *did* decide that the board correctly determined that the ordinance does not permit the zoning administrator to limit non-conforming use status to

quarter-quarters. Indeed it may well be that the policy the board rejected in *Smart* is the reason that quarter-quarters are listed in the "Registration of Mineral Extraction Operations."

We conclude the plain language of the ordinance requires registration and approval of the existing mineral extraction operation, but not the area of intended use.[5] We do not agree with the zoning administrator that this is an absurd and illogical interpretation or that it thwarts the purposes of regulating non-conforming uses.

A non-conforming use is a use of land for a purpose not permitted in the district in which the land is situated. *Waukesha County v. Seitz*, 140 Wis. 2d 111, 114–15, 409 N.W.2d 403, 405 (Ct. App. 1987). While a county may not prohibit the continuance of the lawful use of any building or premises for any trade or industry for which such building or premises is used at the time the ordinances take effect, *see* § 59.69(10), STATS., the statutory authority to regulate non-conforming uses under § 59.69(10) includes the authority to enact ordinances that limit the change or extension of non-conforming uses. *Waukesha County v. Pewaukee Marina, Inc.*, 187 Wis. 2d 18, 24, 522 N.W.2d 536, 539 (Ct. App. 1994). The purpose of requiring registration of non-conforming uses are to establish their

---

[5] We recognize that the board, in its findings, uses the term "registered area" as well as "registered site." However, in view of its rejection of the zoning administrator's interpretation of the ordinance, we understand "registered area" to mean the legal descriptions listed in the record of registered operations and not, as the respondents use the term, to mean the limits of that area for which the zoning administrator has approved non-conforming mineral extraction operations.

lawfulness and to provide the municipality with information on the nature and extent of the existing nonconforming use. 8A EUGENE MCQUILLAN, MUNICIPAL CORPORATIONS § 25.182.10 (3d ed. 1994). The plain language of DANE COUNTY ORDINANCES § 10.191(6) serves these purposes by identifying existing mineral extraction operations and making a record, through the registration and approval process, of their nature, size, location and date first worked.

But, the respondents contend, unless the ordinance is read to limit the area of intended use, unlimited expansion of non-conforming mineral extraction operations is permissible, and that, they assert, violates the general principle that "[t]he spirit of zoning is to restrict rather than increase a non-conforming use and to eliminate such uses as speedily as possible." *State ex rel. Peterson v. Burt*, 42 Wis. 2d 284, 291, 66 N.W.2d 207, 210 (1969). We observe first that this general principle has been relied on by our courts to resolve ambiguous language in ordinances in favor of restricting the continuation of non-conforming uses, *see id.* at 288–89, 166 N.W.2d at 209; in deciding the extent of use required in order to constitute the vested interest necessary for protection as a non-conforming use, *Seitz*, 140 Wis. 2d at 116, 409 N.W.2d at 406; and in deciding whether particular activity constitutes an invalid enlargement of a lawful non-conforming use. *See Pewaukee Marina*, 187 Wis. 2d at 29, 522 N.W.2d at 541. It has not been used, however, to rewrite the plain language of an ordinance.

Moreover the lack of a defined area to which intended use is limited by the ordinance does not have the result the respondents fear. Only operations existing prior to 1969 are non-conforming uses under DANE COUNTY ORDINANCES §§ 10.191(6) and 10.21(1)(c).

The diminishing asset rule is a gloss on the definition of "existing use" for mineral extraction operations whereby all land which constitutes an integral part of the operation, notwithstanding the fact that it was not under actual excavation, is considered "in use." *See Sturgis*, 141 Wis. 2d at 154, 413 N.W.2d at 644. However, this is not an unlimited definition and does not automatically permit expansion of a mineral extraction operation to every portion of every contiguous parcel owned by the operator. "The relevant inquiry is [the owner's] intent and ownership of the property coupled with the unique use of extraction." *Id.* at 152, 413 N.W.2d at 643. These requirements for application of the diminishing asset rule protect against unlimited expansion of mineral extraction operations. There is therefore no need to rewrite the ordinance, even were we or the board free to do so.

In a related challenge to the board's interpretation of the ordinance, Schroeder argues that Halverson has not demonstrated the intent required by the diminishing asset rule because Kaupanger "registered" only the forty acres, thereby indicating an intent not to extract minerals beyond that area. We have already concluded that the ordinance does not require registration or approval of the area over which the operator intended to extract minerals. In addition, as we have already discussed, nothing in the record indicates that Kaupanger was instructed to indicate or register or get approval for the area over which he intended to conduct the operation. Because Schroeder's argument on lack of intent is based on an incorrect interpretation of the ordinance, it does not provide a basis for reversing the board's decision.

In summary, we conclude the board correctly decided that DANE COUNTY ORDINANCES §§ 10.191(6) and 10.21(1)(c) do not require the intended area of the operator's extraction operation to be registered and approved by the zoning administrator in order to constitute a lawful non-conforming use. The board therefore correctly concluded that the zoning administrator's issuance of a stop work order was in error because it was based on his interpretation of the ordinance to the contrary. Accordingly, we reverse the trial court's judgment and remand with directions to enter an order affirming the decision of the board.[6]

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[6] We recognize that our interpretation of the ordinance does not answer the question whether the expanded area of Halverson's operation meets the test of the diminishing asset rule. We understand that the zoning administrator issued a stop work order for the sole reason that the diminishing asset rule does not apply to operations outside the quarter-quarters listed on the record of registered operations, and that appears to be the only issued decided by the board.