MAGNOLIA TOWNSHIP and Western Rock County
Citizens Against Factory Farming, Green-Rock
Audubon Society, Anne M. Johnson, Michael G.
Johnson, Verne Wilke, Rosemary Wilke, Tony
Ends, Dela Ends, Stephen Watson and Richard
Massen and Darlene Massen,
Plaintiffs-Respondents,

v.

TOWN OF MAGNOLIA and Town of Magnolia Board
of Adjustment, Defendants-Respondents,

LARSON ACRES, INC.,
Intervening Defendant-Appellant.†

Court of Appeals

*No. 2004AP1591. Submitted on briefs March 7, 2005.
—Decided May 12, 2005.*

2005 WI App 119

(Also reported in 701 N.W.2d 60.)

† Petition to review denied 11-11-05.

On behalf of the intervenor-defendant-appellant, the cause was submitted on the briefs of *Eric M. McLeod, Michael Best & Friedrich LLP*, Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Glenn M. Stoddard* and *Christ Westerberg, Garvey & Stoddard, S.C.*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Glenn C. Reynolds, Reynolds & Associates*, Madison.

Before Deininger, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J.   The issue on this appeal is whether the Board of Adjustment of the Town of Magnolia lacked the authority to grant a conditional use permit (CUP) after the Town Board had decided to deny it. The circuit court decided that the Board of Adjustment lacked the authority. We agree. We conclude: (1) Wis. Stat. § 60.65(3)[1] requires that the authority of a town board of adjustment to grant CUPs be contained in the town zoning ordinance; (2) the Town of Magnolia's zoning ordinance authorizes the Town Board but not the Board of Adjustment to grant CUPs; (3) there is no statutory authority for the Town Board of Adjustment to hear an appeal from the Town Board's decision to grant or deny a CUP; and (4) the Town's zoning ordinance does not give the Board of Adjustment this appellate authority. We therefore affirm.

## BACKGROUND

¶ 2.   Larson Acres, Inc., a family-owned farming business, sought to consolidate its dairy operation by housing 1200 animal units in one location at County Road B in the Town of Magnolia. That location is zoned A-1 agricultural under the Town's zoning ordinance. The ordinance requires a conditional use permit for "holding pens, commercial feedlots, and confinement operations exceeding 400 animal units or two animal units per acre (whichever is less) . . ." in the A-1 district. Larson applied for a CUP to build a 1500 animal unit confinement facility and to construct a state-approved manure storage facility at the site. The Town Board referred the application to the planning and zoning committee.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 3. After public hearings before the planning and zoning committee on Larson's application, the committee recommended that the Town Board deny the application. Following a public hearing, the Town Board accepted the committee's recommendation and denied the CUP application.

¶ 4. Larson appealed the Town Board's decision to the Board of Adjustment. When the Board of Adjustment met to consider the appeal, the Town's attorney advised "that new issues have come up and questions that were previously not worked out are now worked out." He suggested referring the matter back to the Town Board "so that the new issues [could] be worked out[,]" and the Board of Adjustment voted to do that. At the ensuing Town Board meeting, Larson submitted a proposed settlement agreement under which the CUP would be granted for 1200 animal units on certain conditions. The Town Board voted to refer the proposal "back to the Board of Adjustment for their decision." The Board of Adjustment voted to grant a CUP for 1200 animal units, subject to the conditions in the proposed settlement and additional conditions.

¶ 5. Certain residents and property owners in the Town and adjacent area filed this certiorari action seeking review of the Board of Adjustment's decision to issue the CUP. They asserted, among other points, that the Board of Adjustment lacked the authority to grant CUPs and the authority to review the Town Board's decisions on CUPs. The circuit court agreed. The court concluded that, under the Town's zoning ordinance and the applicable statutes, the Town Board was to make the decision on CUPs and the Board of Adjustment did not have the authority to do so even if the Town Board "chooses to pass it off" to the Board of Adjustment in a particular case. The court therefore decided that the

CUP issued by the Board of Adjustment was void. The court did not reach the issue whether there were adequate grounds to grant the CUP.

¶ 6.   Larson filed a motion asking the court to reconsider its decision. Larson argued that WIS. STAT. §§ 60.65(3) and 59.694(7) authorized the Town Board to delegate to the Board of Adjustment the authority to grant CUPs and that the record supported the conclusion that such a delegation had occurred. The court considered and rejected this argument; thus it did not change its decision that the CUP was void.

## DISCUSSION

¶ 7.   On appeal, Larson makes two main arguments in support of its contention that the court erred in declaring the CUP void. First, Larson asserts, the Town Board had the statutory authority to delegate to the Board of Adjustment the power to grant CUPs. In the alternative, Larson asserts, under the Town's ordinance the Board of Adjustment had the authority to hear appeals of Town Board decisions on CUPs.

¶ 8.   On certiorari review of a decision of a board of adjustment, this court, like the circuit court, is limited to determining:  (1) whether the board kept within its jurisdiction; (2) whether the board proceeded on a correct theory of law; (3) whether the board's action was arbitrary, oppressive or unreasonable and represented its will and not its judgment;  and (4) whether the evidence was such that the board might reasonably make the determination in question. *Manthe v. Town Bd. of Windsor*, 204 Wis. 2d 546, 551, 555 N.W.2d 167 (Ct. App. 1996). The first inquiry is the one

at issue on this appeal. This presents a question of law, which we review de novo. *Id.* While Larson is correct that courts generally defer to decisions of boards of adjustment when the merits of the decisions are challenged, *see, e.g., Edward Kraemer & Sons, Inc. v. Sauk County Bd. of Adjustment*, 183 Wis. 2d 1, 8, 515 N.W.2d 256 (1994), we do not defer on the issue of whether the board exceeded its authority. *See Manthe*, 204 Wis. 2d at 551.

¶ 9.   Resolution of both Larson's arguments on the authority of the Board of Adjustment requires that we construe statutes and ordinances. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, statutory language is ambiguous—that is, capable of being understood by reasonably well-informed persons in two or more senses—then we may employ sources extrinsic to the statutory text. *Id.*, ¶¶ 47, 50. These extrinsic sources are typically items of legislative history. *Id.*, ¶ 50. We apply these same principles to the construction of ordinances. *Schroeder v. Dane County Bd. of Adjustment*, 228 Wis. 2d 324, 333, 596 N.W.2d 472 (Ct. App. 1999).

I. Authority to Grant CUPs

    A. Does WIS. STAT. § 60.65(3) Require the Town Board to Authorize CUP-Granting Authority in the Zoning Ordinance?

¶ 10.  Larson argues that WIS. STAT. § 60.65(3) gives the Town Board the authority to delegate to the Board of Adjustment the power to grant CUPs. Section 60.65(3) provides:

> **(3)** POWERS AND DUTIES. The town board may authorize the board of adjustment to, in appropriate cases and subject to appropriate conditions and safeguards, permit special exceptions to the terms of the zoning ordinance under s. 60.61 consistent with the ordinance's general purpose and intent and with applicable provisions of the ordinance. This subsection does not preclude the granting of special exceptions by the town zoning committee designated under s. 60.61 (4) or the town board, in accordance with regulations and restrictions adopted under s. 60.61.[2]

¶ 11.  Larson's argument is premised on its characterization of what the Town Board did when it voted to refer Larson's proposed settlement "back to the Board of Adjustment for their decision." According to Larson, the Town Board was treating the proposed settlement as an amended application for a CUP and was delegating to the Board of Adjustment the power to grant or deny the amended CUP. The

---

[2] All parties agree that "special exceptions" as used in this statute has the same meaning as CUPs. *State ex. rel. Skelly Oil Co. v. Common Council*, 58 Wis. 2d 695, 700, 207 N.W.2d 585 (1973). A CUP allows a property owner to put his or her property to a use that the ordinance expressly permits when certain conditions have been met. *Id.* at 701.

respondents[3] dispute this characterization of what occurred, asserting that it is not clear what the Town Board intended. We will assume for purposes of argument that the Town Board's vote was a delegation to the Board of Adjustment to decide whether to grant or deny an amended application for a CUP, and we will proceed to decide whether WIS. STAT. § 60.65(3) authorized the Town Board to do that.

¶ 12.   The general statutory framework regarding town boards and town boards of adjustment provides the context for understanding WIS. STAT. § 60.65(3) and the other statutes involved on this appeal. Both town boards and boards of adjustment are creatures of statute and have only those powers the legislature gives them. *Silver Lake Sanitary Dist. v. DNR*, 232 Wis. 2d 217, 221, 607 N.W.2d 50 (Ct. App. 1999). Under WIS. STAT. § 60.61(2), town boards have the authority to adopt zoning ordinances if the town is located in a county that has not enacted a zoning ordinance under WIS. STAT. § 59.69.[4] "If [a town adopts] a zoning ordinance . . . under s. 60.61, the town shall establish and appoint a board of adjustment." Section 60.65(1). The "[b]oards of adjustment under town zoning ordinances shall have the powers and duties provided for boards of adjustment under s. 59.694 and shall carry out their duties in the manner provided for boards of adjustment

---

[3] In addition to the petitioners in the certiorari action, the Town of Magnolia and the Town Board of Adjustment are respondents on this appeal, the latter two entities having filed a separate, joint brief. We refer to them all as "the respondents," without identifying which arguments are made in which brief.

[4] Although no party has clarified this, we assume that the Town has the authority to adopt a zoning ordinance under WIS. STAT. § 60.61(2).

by s. 59.694." Section 60.65(5).[5] Section 59.694 governs county boards of adjustment.

¶ 13.  Focusing now on WIS. STAT. § 60.65(3), this subsection specifically addresses the requirements for a town board of adjustment having the authority to grant CUPs:  it has that authority when the town board authorizes the board of adjustment to grant CUPs "in appropriate cases and subject to appropriate conditions and safeguards . . . consistent with the ordinance's general purpose and intent and with applicable provisions of the ordinance." Section 60.65(3).[6]

¶ 14.  Larson argues that WIS. STAT. § 60.65(3) permits a town board to authorize a board of adjustment to grant a CUP in a particular case, even if the town ordinance does not give such authority to the board of adjustment. Larson emphasizes that § 60.65(3) does not expressly require a town board to authorize "by ordinance." The respondents disagree with Larson, asserting that the authorization for a town board of adjustment to grant CUPs must be in the zoning ordinance.

¶ 15.  Even if we assume for argument's sake that Larson's proposed construction is reasonable, we conclude that the respondents' construction is the more reasonable. It is difficult to envision how a town board may authorize a board of adjustment to grant CUPs "subject to appropriate conditions and safeguards" if the town board is able to grant such authority on an ad hoc

[5] However, for towns that elect to adopt village powers pursuant to WIS. STAT. §§ 60.10(2)(c) and 60.22(3), WIS. STAT. § 62.23, which governs city zoning, applies. WIS. STAT. § 61.35.

[6] All parties assume, and, we agree, that the authority to "permit special exceptions" includes the authority to deny them; thus we use the shorthand "the authority to grant CUPs."

basis. "Conditions and safeguards" is more reasonably understood as the standards embodied in an ordinance than a vote in a particular case to send a particular CUP application to a board of adjustment for decision. Moreover, we agree with the respondents that an ad hoc delegation of authority creates the potential for arbitrariness because of the lack of standards. In general, zoning decisions implicate important private and public interests, *Marris v. City of Cedarburg*, 176 Wis. 2d 14, 25, 498 N.W.2d 842 (1993), and that is true of decisions to grant a CUP. The articulation in the zoning ordinance of a town board of adjustment's authority to grant CUPs, and the conditions and safeguards under which it may do so (if the town board chooses to delegate this authority to the board of adjustment), is more consistent with the important interests at stake than is an ad hoc delegation by a town board.

¶ 16. Larson argues that the use of "by ordinance" in other sections relating to town boards, compared to the absence of that phrase in the first sentence of Wis. Stat. § 60.65(3), shows the legislature did not intend that town boards act under this section "by ordinance."[7] However, the use of more explicit language in other sections does not persuade us that the legislature intended that "appropriate conditions and safeguards" be somehow established outside of the town zoning ordinance.

¶ 17. Larson also argues that, under the rules of grammar, the last phrase in the first sentence— "consistent with the ordinance's general purpose and

---

[7] Larson gives as examples Wis. Stat. § 60.61(2), which addresses the town board's general zoning authority, and Wis. Stat. § 60.24(1)(c), which addresses the authority for one other than the town board chairperson to sign various pieces of legislation.

intent and with applicable provisions of the ordinance" —modifies the manner in which a town board of adjustment is to grant CUPs when authorized and not the manner in which the town board is to make that authorization. *See Georgiades v. Glickman*, 272 Wis. 257, 263–64, 75 N.W.2d 573 (1956) (where modifying clause is not preceded by a comma, the modifying clause modifies only the last antecedent clause). However, even if this last phrase does not modify the manner in which the town board is to make the authorization, we are satisfied that the phrase "subject to appropriate conditions and safeguards" already conveys the legislative intent that the town board is to do this in its zoning ordinance.

¶ 18. The legislative history of WIS. STAT. § 60.65(3) supports this construction. The predecessor to this subsection, numbered WIS. STAT. § 60.75(1) (1981–82), explicitly required the authorization by the town board to be "in the regulations and restrictions adopted pursuant to s. 60.74 [now 60.61]":

> **Adjustment board; appointment; powers and duties. (1)** The town board may provide for the appointment of a board of adjustment, and *in the regulations and restrictions adopted pursuant to s. 60.74* may provide that such board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained. Nothing in this subsection shall preclude the granting of special exceptions by the town zoning agency designated under s. 60.74(2) or the town board in accordance with regulations and restrictions adopted pursuant to s. 60.74 which were in effect on July 7, 1973 or adopted after that date.

(Emphasis added.)

373

¶ 19. The entire WIS. STAT. ch. 60, Towns, was repealed and recreated by 1983 Wisconsin Act. There is an extensive prefatory note explaining the reasons the chapter needed revision and discussing the major changes. *See* 1983 Wis. Act 532, Prefatory Note. There are also notes accompanying specific sections. The prefatory note does not refer to any topic that includes zoning ordinances, but this is the note to the new WIS. STAT. § 60.65:[8]

NOTE: Revises s. 60.75 as follows:

1. The town board is required, rather than permitted, to appoint a board of adjustment.

2. The current requirement that all meetings of the board of adjustment be open to the public is repealed. The special committee concluded that there is no persuasive reason to retain this absolute requirement. Meetings of the board will be subject to the general open meetings law, subch. IV of ch. 19, which generally requires open meetings of governmental bodies but permits closed meetings under specified circumstances.

¶ 20. Thus, although the new WIS. STAT. § 60.65 omitted the phrase "in the regulations and restrictions adopted pursuant to s. 60.74," the note makes no reference to it. The specific reference to the other changes is a strong indication that the legislature did not intend to change the manner in which town boards were permitted to authorize their boards of adjustment to grant CUPs. Such a change would be significant, and it is unlikely the legislature intended to make the change when there is no reference to it in the note.

[8] WISCONSIN STAT. § 60.75 has subsequently been repealed and reinstated as WIS. STAT. § 60.65 by 1983 Wis. Act 532, § 7, effective January 1, 1985.

¶ 21. We also observe that the parallel county and city statutes both require that the "appropriate conditions and safeguards" be in the respective ordinances: "in the regulations and restrictions adopted [in the county zoning ordinance]," WIS. STAT. § 59.694(1);[9] and "in such [city zoning] regulations." WIS. STAT. § 62.23(7)(e)1.[10] Larson sees these explicit references to "regulations" as an indication that the legislature had a different intent for town boards. However, we can see no reason why the legislature would intend that town boards operate outside their zoning ordinances in delegating CUP-granting author-

---

[9] WISCONSIN STAT. § 59.694(1) provides:

(1) APPOINTMENT, POWER. The county board may provide for the appointment of a board of adjustment, and in the regulations and restrictions adopted under s. 59.69 may provide that the board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained. Nothing in this subsection precludes the granting of special exceptions by the county zoning agency designated under s. 59.69 (2) (a) or the county board in accordance with regulations and restrictions adopted under s. 59.69 which were in effect on July 7, 1973, or adopted after that date.

[10] WISCONSIN STAT. § 62.23(7)(e)1 provides:

(e) *Board of appeals.* 1. The council which enacts zoning regulations pursuant to this section shall by ordinance provide for the appointment of a board of appeals, and shall provide in such regulations that said board of appeals may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained. Nothing in this subdivision shall preclude the granting of special exceptions by the city plan commission or the common council in accordance with the zoning regulations adopted pursuant to this section which were in effect on July 7, 1973 or adopted after that date.

ity to their boards of adjustments, but county boards and city councils may not.

¶ 22. Larson also argues that WIS. STAT. § 59.694(7)(b) supports its construction:

(7) POWERS OF BOARD. The board of adjustment shall have all of the following powers:

. . . .

(b) To hear and decide special exceptions to the terms of the ordinance upon which the board is required to pass under such ordinance.

As noted above, § 59.694, which governs county boards of adjustment, establishes the powers and duties of town boards of adjustment by virtue of WIS. STAT. § 60.65(5). Larson contends that § 59.694(7)(b) is redundant if § 60.65(3) is construed to require town boards to delegate by ordinance CUP-granting authority to town boards of adjustment. We do not agree. Section 60.65(3) focuses on the authority of town boards, just as § 59.694(1) focuses on the authority of county boards. Section 59.694(7)(b) addresses the powers of the boards of adjustment and complements, but does not duplicate, § 60.65(3) and § 59.694(1). If a town (or county) board has chosen to exercise the authority given it in § 60.65(3) (or § 59.694(1)) to provide in its zoning ordinance that its board of adjustment may grant CUPs, then—and not otherwise—does the board of adjustment have the power to do so.

B. Does the Zoning Ordinance Authorize the Board of Adjustment to Grant CUPs?

¶ 23. Larson argues in the alternative that, even if WIS. STAT. § 60.65(3) requires that the delegation of

CUP-granting authority to a board of adjustment be by ordinance, the Town zoning ordinance does grant that authority. We turn to the ordinance now.

¶ 24. Section 5 of the TOWN OF MAGNOLIA, WIS., ZONING ORDINANCE is entitled "Conditional Use Permits." Subsection 5.1 provides that "[a]ny use listed as a conditional use in this Ordinance shall be permitted only upon application in duplicate to the Building Inspector and issuance of a Conditional Use Permit by the Planning & Zoning Committee." Subsection 5.2 specifies the information the planning and zoning committee may require "upon which to base its determination"; subsec. 5.3 lists the standards the committee is to consider "[i]n passing upon a Conditional Use Permit application"; and subsec. 5.4 authorizes the committee to attach conditions in addition to those specified. Prior to December 1997, subsec. 5.5 provided that "[b]efore issuing a Conditional Use Permit, the Planning and Zoning Committee [was to] hold a public hearing." In December 1997, the Town Board adopted an amendment to subsec. 5.5, which was in effect at all times relevant to this appeal:

> The planning and zoning committee shall hold a public hearing on all applications for a conditional use permit. Notice of such public hearing specifying the time, place and matters to come before the committee shall be given as a class 2 notice as referred to in Chapter 985, Wisconsin Statutes. The planning and zoning committee following the public hearing shall make a recommendation to the Town Board to grant or deny the permit. *The Town Board, after a public hearing to consider the recommendation of the planning and zoning committee recommendation shall vote to grant or deny the permit.*

TOWN OF MAGNOLIA, WIS., ZONING ORDINANCE No. 97–03,

§ 5.5 (Dec. 15, 1997) (emphasis added). Amended subsec. 5.5 now plainly gives the Town Board the authority to grant or deny CUPs, whereas before the planning and zoning committee had that authority. Larson does not disagree with this, but contends that subsec. 5.5 does not state that the Town Board's authority is exclusive. According to Larson, two other provisions, subsec. 8.1 and § 7.0, give the Board of Adjustment the authority to grant CUPs.[11]

¶ 25.  Section 8 is entitled "Board of Adjustment." Subsection 8.1 provides now, as it did before the 1997 amendment to subsec. 5.5:  "Establishment:   There is hereby established a Board of Adjustment for the Township for the purpose of hearing appeals and applications, and granting variances and exceptions to the provisions of this Zoning Ordinance." Larson argues that "exceptions" here means CUPs, relying on the case law that has established that "special exceptions" in WIS. STAT. § 60.65(3) means CUPs. *See* footnote 2 above. When read in isolation, the meaning of "exceptions" in subsec. 8.1 is not clear:  it might refer to special exceptions, that is, CUPs; it might relate to variances, which are also in some sense "exceptions" to the provisions of the zoning ordinance;[12] or it might have an-

---

[11] Larson relies in addition on what it asserts were the Town's practices and the Town's construction of the ordinance before the 1997 amendment of subsec. 5.5. We do not consider these arguments relevant to a construction of the ordinance with amended subsec. 5.5.

[12] The ordinance defines "variance " as follows:

authority granted to the owner to use his property in a manner which is prohibited by the zoning ordinance. A departure from the terms of the zoning ordinance where it is shown that unique physical circumstances applying to a land parcel causes a hardship to the owner, and that the condition permitted by the departure

378

other meaning. However, when we read subsec. 8.1 in the context of the entire § 8 and the rest of the ordinance, including amended subsec. 5.5, we are satisfied that it is not reasonable to read subsec. 8.1 to give the Board of Adjustment the authority to grant CUPs. "Exception" is not defined in the definition section of the ordinance and we are unable to find the word "exception" in any provision of the ordinance that might reasonably relate to subsec. 8.1.[13] In contrast, the terms "conditional use permit" and "conditional use" are consistently used throughout the ordinance; "conditional use" is defined in the definition section;[14] and "conditional use permits" are addressed in detail in § 5. As we have noted above, with the amended subsec. 5.5, the authority to grant CUPs is plainly vested in the Town

still will be in fundamental harmony with surrounding uses. (a) Area Variance:   Is one which does not involve a use which is prohibited by the zoning ordinance. Area variances involve matters such as setback lines, frontage requirements, height limitations, lot-size restrictions, density, density regulations, and yard requirements. (b) Use Variance:   Is one which permits a use of land other than which is prescribed by the zoning ordinance. It is primarily a grant to erect, alter or use a structure for a permitted use in a manner other than that prescribed by the ordinance.

TOWN OF MAGNOLIA, WIS., ZONING ORDINANCE § 14.2.

[13] "Exceptions to Height Regulations" are addressed under "General District Regulations," subsec. 4.3(2), but "exception" as used here refers to specific types of structures to which the height regulations do not apply.

[14] TOWN OF MAGNOLIA, WIS., ZONING ORDINANCE § 14.2 provides:

Conditional Use. A use of land which, while appropriate for inclusion within a given district, possesses a high likelihood of creating problems with regard to nearby parcels of land or the occupants thereof, and which are therefore permitted only subject to the fulfillment of conditions which effectively insure that no such problems will be created.

Board. There is no mention of the Board of Adjustment in § 5. In subsec. 8.4, which specifically identifies the powers of the Board of Adjustment, there is no mention of granting CUPs.[15] Given the detail with which the ordinance defines the powers of the Board of Adjustment and defines the procedure and authority for granting CUPs, it is not reasonable to conclude that, by using the word "exception" in subsec. 8.1, the Town Board intended to convey to the Board of Adjustment the authority to grant CUPs.

---

[15] TOWN OF MAGNOLIA, WIS., ZONING ORDINANCE § 8.4 provides:

Powers

The Board of Adjustment shall have the following powers:

(1) Errors. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Planning & Zoning Committee or its delegates in the enforcement of codes, regulations or ordinances under their jurisdiction.

(2) Variances. To hear and grant appeals for variances as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement will result in practical difficulty or unnecessary hardship, so that the spirit and purposes of the Ordinance shall be observed and the public safety, welfare, and justice secured. Use variances and self-imposed hardships shall not be granted.

(3) Interpretations. To hear and decide application for interpretations of the codes, regulations, ordinances and the boundaries of the zoning districts after the Planning & Zoning Committee has made a review and recommendations.

(4) Permits. The Board may reverse, affirm wholly or partly, modify the requirements appealed from, and may direct the issue of a permit.

(5) Assistance. The Board may request assistance from other town and county officials, departments, commissions, and boards.

(6) Oaths. The Chairman shall administer oaths and may compel the attendance of witnesses.

¶ 26.   Section 7 is entitled "Standards for Evaluating Conditional Uses, Changing Zoning Districts and Granting Variances," and the introductory language provides:

> The following information may be used by the Planning and Zoning Committee, Town Board or Board of Adjustment prior to or during proceedings where conditional use permits, zoning district changes or variances are being considered. Conditions of approval can be attached by the Planning and Zoning Committee, Town Board or Board of Adjustment to address problems which are not direct conflicts of the interest of this ordinance. The following guidelines are not all inclusive.

¶ 27.   The only reasonable meaning of this language is that the guidelines that follow may be used when each of the entities referred to is making decisions that it is authorized to make by other sections of the ordinance. It is not reasonable to read this language as providing authorization in addition to that which is specifically provided elsewhere:   such a construction would give each of these entities the authority to make all decisions and consider all appeals for conditional use permits, zoning district changes and variances, regardless of the specific allocation of these responsibilities made in other sections. That makes no sense.

■

¶ 28.   We conclude that the zoning ordinance authorizes the Town Board to grant CUPs as provided in the amended subsec. 5.5 and does not authorize the Board of Adjustment to grant CUPs.[16] Because WIS.

---

[16] Because of this conclusion, we do not address the respondents' argument that, under *Town of Hudson v. Hudson Town Bd. of Adjustment*, 158 Wis. 2d 263, 461 N.W.2d 827 (Ct. App.

Stat. § 60.65(3) requires that the authority of a town board of adjustment to grant CUPs be contained in the zoning ordinance, we conclude the Board of Adjustment did not have the authority to grant a CUP to Larson.

## II. Authority to Hear Appeals of Town Board's Decisions on CUPs

¶ 29.  Although Larson's primary argument is that the Board of Adjustment granted an amended application for the CUP and had the authority to do so, it also argues that, even if what the Board of Adjustment did was to hear an appeal of the Town Board's decision on the CUP, it had the authority to do that. Larson does not separately discuss the statutory source of this appellate authority but focuses on the ordinance. However, because both town boards and boards of adjustment have only those powers the legislature gives them, *see Silver Lake Sanitary Dist.*, 232 Wis. 2d at 221, we begin by addressing whether any statute authorizes a town board of adjustment to hear an appeal of a town board's decision to grant or deny a CUP.

¶ 30.  Wisconsin Stat. § 60.65(3) addresses the conditions under which a town board may authorize a town board of adjustment to grant CUPs, but plainly does not refer to authorization to hear appeals of decisions granting or denying CUPs. Wisconsin Stat. § 59.694(7), applicable to town boards by § 60.65(5), gives boards of adjustment authority to hear appeals as follows:

(a) To hear and decide appeals where it is alleged there is error in an order, requirement, decision or

---

1990) (construing Wis. Stat. § 62.23(7)(e)), the ordinance may not give both the Town Board and the Board of Adjustment the authority to grant CUPs.

determination made by an administrative official in the enforcement of s. 59.69 or of any ordinance enacted pursuant thereto.

. . . .

(c) To authorize upon appeal in specific cases variances from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

Paragraph (a) plainly does not apply to appeals from the decisions of a town board granting or denying a CUP because a town board is not an "administrative official." Paragraph (c) plainly does not apply because that relates only to variances.

¶ 31. Our conclusion that Wis. Stat. § 59.694(7) does not authorize a board of adjustment to hear appeals of town board decisions to grant or deny CUPs is supported by subsec. (8):

(8) Order on appeal. In exercising the powers under this section, the board of adjustment may, in conformity with the provisions of this section, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make the order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken.

The reference to "the officer from whom the appeal is taken" plainly does not refer to a town board.

¶ 32. Our construction of Wis. Stat. § 59.694(7)(a) and (8) is consistent with our construction in *Town of Hudson v. Hudson Town Bd. of Adjustment*, 158 Wis. 2d

263, 461 N.W.2d 827 (Ct. App. 1990)[17] of identical language from Wis. Stat. § 62.23(7)(e)4 and 8.[18] We held that § 62.23(7)(e)4 and 8 did not authorize that town board of adjustment to review CUP decisions of that town board because they referred to "officers." 158 Wis. 2d at 272-73.

■

¶ 33. We conclude there is no statutory authority for a town board of adjustment to hear appeals from decisions of town boards granting or denying CUPs.[19] This conclusion makes it unnecessary to address

---

[17] Wisconsin Stat. § 62.23(7)(e) applied to that town board because that town's electors had adopted village powers. *Town of Hudson*, 158 Wis. 2d at 269 n.4. *See* footnote 5 above.

[18] Wisconsin Stat. § 62.23(7)(e)4 and 8 provide:

> 4. Appeals to the board of appeals may be taken by any person aggrieved or by any officer, department, board or bureau of the city affected by any decision of the administrative officer. Such appeal shall be taken within a reasonable time, as provided by the rules of the board, by filing with the officer from whom the appeal is taken and with the board of appeals a notice of appeal specifying the grounds thereof. The officer from whom the appeal is taken shall forthwith transmit to the board all the papers constituting the record upon which the action appealed from was taken.

> . . . .

> 8. In exercising the above mentioned powers such board may, in conformity with the provisions of such section, reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the officer from whom the appeal is taken, and may issue or direct the issue of a permit.

[19] Of course, this does not mean there is no right to an appeal of the decision of a town board to grant or deny a CUP; rather, the right to appeal is to the circuit court, not the board of adjustment. *Town of Hudson*, 158 Wis. 2d at 275.

whether the Town's ordinance grants this authority, because any authority granted in excess of that allowed by statute is invalid. *Id.* However, in the interests of a complete analysis, we address Larson's argument that the zoning ordinance authorizes the Board of Adjustment to hear appeals of decisions of the Town Board granting or denying CUPs.

¶ 34. Larson relies primarily on subsec. 8.4(4), which is entitled "Permits" and provides that the Board of Adjustment "may reverse, affirm wholly or partly, modify the requirements appealed from, and may direct the issue of a permit." However, "permit" is defined in subsec. 14.2 as a building permit: *"Permit.* A written building permit or certification issued by the Planning and Zoning Committee permitting the construction, alteration and/or extension of a building under the provisions of this Ordinance." In view of this definition and the consistent use of the term "conditional use permit" throughout the ordinance, it is not reasonable to read subsec. 8.4(4) as authorizing the Board of Adjustment to hear appeals of decisions granting or denying CUPs.

¶ 35. Larson also refers to subsec. 8.1 and § 7.0 in this argument, but, for reasons similar to those we have already discussed in paragraphs 25–26 above, neither of those sections can be reasonably read to give the Board of Adjustment authority to hear appeals from the Town Board's decisions on CUPs. The reference to "exceptions" in subsec. 8.1 does not mean conditional use permits, and the reference to "appeals" does not mean appeals that are not authorized in subsec. 8.4(4). Section 7.0 does not give any entity authority it does not have under other provisions of the ordinance.

385

¶ 36. We therefore conclude that the zoning ordinance does not authorize the Board of Adjustment to hear Larson's appeal from the Town Board's denial of a CUP. We repeat for emphasis that, even if the ordinance did, such authorization would be invalid because it would be in excess of that granted by statute.

*By the Court.*—Order affirmed.