## 2019 WI APP 42

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2018AP580

Complete Title of Case:

### ECO-SITE, LLC F/K/A ECO-SITE, INC., SCOTT R. AKERLUND AND PATRICIA A. AKERLUND,

#### PLAINTIFFS-APPELLANTS,

#### V.

### TOWN OF CEDARBURG,

#### DEFENDANT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | July 24, 2019 |
| Oral Argument: | July 8, 2019 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Hagedorn, J. |
| Concurred: | Reilly, P.J. |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *J. Michael Long*, *Lisa M. Lawless*, and *James C. Remington* of *Husch Blackwell LLP*, Milwaukee. There was oral argument by *Lisa M. Lawless* and *J. Michael Long*. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Remzy D. Bitar* and *Luke A. Martell* of *Municipal Law & Litigation Group, S.C.*, Waukesha. There was oral argument by *Remzy D. Bitar*. |

COURT OF APPEALS
DECISION
DATED AND FILED

July 24, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP580**

STATE OF WISCONSIN

Cir. Ct. No. **2017CV209**

IN COURT OF APPEALS

---

ECO-SITE, LLC F/K/A ECO-SITE, INC., SCOTT R. AKERLUND AND PATRICIA A. AKERLUND,

 PLAINTIFFS-APPELLANTS,

 V.

TOWN OF CEDARBURG,

 DEFENDANT-RESPONDENT.

---

 APPEAL from a judgment of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Affirmed*.

 Before Neubauer, C.J., Reilly, P.J., and Hagedorn, J.

 ¶1 NEUBAUER, C.J. This case involves the siting of a cell tower in the middle of a rural area in the Town of Cedarburg. Those proposing the tower— Eco-Site, LLC f/k/a Eco-Site, Inc., Scott R. and Patricia A. Akerlund—appeal

from a judgment of the circuit court upholding the Town's denial of the application for a conditional use permit (CUP) for the tower. Because the Town proceeded on a correct theory of law when it determined that the tower was incompatible with the uses, values, and enjoyment of the other property in the area under its ordinance, and this decision was supported by substantial evidence, we affirm.

## BACKGROUND

¶2 T-Mobile USA and T-Mobile Central LLC currently have their cellular equipment located (referred to as "collocated") on the Village of Grafton water tower, which is across the road from Akerlund Acres, a horse farm. Although T-Mobile has a lease at the water tower that runs until 2031, T-Mobile sought to move their equipment to Akerlund Acres, about 1300 feet away. T-Mobile and Eco-Site executed a contract to lease a portion of the southeast corner of the Akerlunds' land.

¶3 On November 24, 2015, Eco-Site and the Akerlunds, working with T-Mobile and Pyramid Network Services, LLC (collectively called Eco-Site), applied to the Town for a CUP to erect a 120-foot metal monopole wireless communication tower and supporting 5600 square foot structure on Akerlund Acres. Owned by the Akerlunds and located in an area currently zoned as an A-1 Agricultural District, the land was surrounded by property zoned as residential.[1]

---

[1] A-1 Agricultural Districts are zoned for the principal uses of apiculture, dairying, floriculture, forestry, general farming, grazing, greenhouses, hatcheries, horticulture, livestock raising, nurseries, orchards, paddocks, pasturage, poultry raising, stables, truck farming, and viticulture. TOWN OF CEDARBURG, WIS., CODE § 320-25A. (2018).

¶4     On December 4, 2015, the Town notified Eco-Site that the application was incomplete.  Two more applications—dated January 20 and February 22, 2016—were similarly rejected as incomplete.

¶5     Eventually, Eco-Site's application was put on the agenda for the Town and Plan Commission meeting on April 20, 2016.  However, due to input from the public at a town planning commission meeting, Eco-Site withdrew its application to search for alternate locations.  On September 28, 2016, Eco-Site resubmitted its application.

¶6     At a town board meeting on May 3, 2017, after a full discussion of the information and issues, Town Supervisor Gary Wickert moved to deny the application for failure to meet three of six ordinance requirements and one statutory requirement.  These grounds for denial were the following:  (1) the considerable and foreseeable loss in value to the surrounding properties particularly given the rural and rustic nature of the property, and the loss of property sales in the area as a result of the prospect of the tower; (2) the incompatibility of the 120-foot monopole with the adjacent land, which the Town is struggling to keep rural and rustic; (3) the "dropping a metal tower in the middle of" a "beautiful and scenic area" would be detrimental the public health, safety, and general welfare; and (4) Eco-Site's failure to explain why its "search ring" for other locations was so small, therefore failing to provide an application that was complete under WIS. STAT. § 66.0404(2)(b)6. (2017-18).[2]

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version.

¶7    Wickert's motion was seconded, and the board voted 4-0 to deny the application. The Town provided Eco-Site with a May 3, 2017 letter explaining the same reasons for the denial identified by Wickert.

¶8    In June 2017, Eco-Site filed a summons and a petition for certiorari or, in the alternative, a complaint for declaratory judgment.[3]  Upon reviewing the record and briefs, the circuit court ruled that the reasons set forth by the Town were not "just another way of saying aesthetics," but were in fact "legitimate reasons" for disapproval and that there was "substantial evidence" within the record to support its decision. Eco-Site appealed.

## STANDARD OF REVIEW

¶9    Our appellate certiorari review looks only at the Town's decision, not the circuit court's. *Lake Delavan Prop. Co. v. City of Delavan*, 2014 WI App 35, ¶5, 353 Wis. 2d 173, 844 N.W.2d 632.  The scope of our review is confined to four areas:  (1) whether the Town kept within its jurisdiction; (2) whether the Town acted according to law; (3) whether the Town's action was arbitrary, oppressive, or unreasonable, and represented its will, and not its judgment; and (4) whether the evidence was such that the Town might reasonably make the order or determination in question. *Id.*, ¶4.  We accord a presumption of correctness and validity to the decision of the Town, but whether the Town has exceeded its authority and how statutes are interpreted are questions of law we review de novo. *Id.*, ¶¶4-5.

---

[3] The Akerlunds filed for certiorari with Eco-Site.  For ease of reference, we will usually refer to Eco-Site.

**THE LAW**

¶10     Through the Telecommunications Act of 1996, Congress attempted to balance the many conflicting interests affecting the placement of facilities for wireless services, including the regulatory interests of state and local governments and the need for a uniform national policy. *See Aegerter v. City of Delafield*, 174 F.3d 886, 887 (7th Cir. 1999). "The Act empowers state and local governments to regulate the placement of facilities for personal wireless services, but their authority is not unfettered." *Id.* at 887-88. When making decisions, a local government must not discriminate against providers of equivalent services or prohibit, or have the effect of prohibiting, "the provision of personal wireless services," and it must respond in a reasonable time frame to requests for modification or construction of related facilities and provide a written decision supported by substantial evidence "contained in a written record" if a request is denied. *Id.* at 888-89; *see* 47 U.S.C. § 332(c)(7)(B) (2018).

¶11     For its part, in 2013, the Wisconsin Legislature created WIS. STAT. § 66.0404, which requires municipalities to use statewide standards for the siting and construction of mobile service support structures. While preempting many municipal regulations, it does not preempt all local control, providing that, subject to the statute, municipalities may enact zoning ordinances "to regulate any … siting and construction of a new mobile service support structure and facilities." Sec. 66.0404(2)(a)1.

¶12     Certain reasons for denial of an application are prohibited by statute. Relevant here, a municipality may not do any of the following:

> (c) Enact an ordinance prohibiting the placement of a mobile service support structure in particular locations within the political subdivision.

….

(g) Disapprove an application to conduct an activity described under [WIS. STAT. § 66.0404(2)(a)] based solely on aesthetic concerns.

Sec. 66.0404(4).

¶13　The statute also lays out a process for both the municipality and the applicant. When the construction of an entirely new structure is being proposed, as here, the applicant must explain why it chose the location and why it did not choose collocation, with a sworn statement from a responsible individual confirming that collocation within the "search ring" would lessen functionality, coverage, or capacity, or was technically infeasible, or was economically burdensome.[4] WIS. STAT. § 66.0404(2)(b)6. If an applicant refuses to do so, the municipality may reject the application. Sec. 66.0404(2)(e).

¶14　Through its ordinances, the Town has its standards for approval of conditional uses. The ordinance states no conditional use shall be granted unless all six of the ordinance's conditions are met, to include the following three relied upon by the Town:

(1) Welfare. The establishment, maintenance or operation of the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

(2) Compatible with adjacent land. The uses, values and enjoyment of other Town property in the neighborhood for purposes already permitted shall be

---

[4] A "search ring" is "a shape drawn on a map to indicate the general area within which a mobile service support structure should be located to meet radio frequency engineering requirements, taking into account other factors including topography and the demographics of the service area." WIS. STAT. § 66.0404(1)(r).

6

in no foreseeable manner substantially impaired or diminished by the establishment, maintenance or operation of the conditional use.

(3) Not impede surrounding property development and improvement. The establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding Town property for uses permitted in the district.

TOWN OF CEDARBURG, WIS., CODE § 320-51A (2018).

## DISCUSSION

¶15    Eco-Site generally asserts that the Town proceeded on an incorrect theory of law in two different ways:  it misapplied its own zoning ordinances—determining that the tower would be incompatible with the adjacent land—and it based its decision on a statutorily prohibited factor—solely aesthetic concerns. We reject each in turn.

*The Tower Is Incompatible With The Adjacent Land*

¶16    The Town denied the application because the tower was not "[c]ompatible with adjacent land" and it would substantially impair or diminish the "uses, values and enjoyment of other Town property in the neighborhood." *See* TOWN OF CEDARBURG, WIS., CODE § 320-51A(2).  We see no error by the Town in denying the application on this point.  The Town zoned the area agricultural and the neighboring area residential, all in an effort to keep this area

rustic, rural, and populated.[5] This intended use and lifestyle are clearly at odds with, and would be thwarted by, the introduction of a 120-foot tall telecommunications tower with its substantial related structure and fencing. The Town proceeded on a correct theory of law by relying on the applicable ordinance and applying it properly. *Edward Kraemer & Sons, Inc. v. Sauk Cty. Bd. of Adjustment*, 183 Wis. 2d 1, 8-9, 515 N.W.2d 256 (1994).

¶17    Moreover, there were concerns expressed, by more than one citizen, about how such a discordant and large structure will diminish property values, which was a reason noted by Wickert.[6] That concern fairly relates to the compatibility of the tower and the residents' "uses, values and enjoyment" of their land.[7] Eco-Site does not challenge the substantial diminishment in property values as a valid ground for denial, but instead characterizes decreased property values

---

[5] WEBSTER'S defines "rustic" as "relating to the country" and "having or exhibiting qualities held to be characteristic of rural people," and it defines "rural" as "living in country areas : engaged in agricultural pursuits" and "characterized by simplicity : lacking sophistication." *Rustic* and *rural*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). As the definitions indicate, "rustic" and "rural" are descriptive of function, manner, and use of the land, not exclusively visuals.

[6] At the public hearings, many residents expressed serious concerns about property values, personally believing that there would be a negative impact. As a specific example, Larry Lechner, a resident and developer, stated he lost a potential sale when the buyer learned of the tower, and he knows of another lot owner who said he would not have purchased the lot had he known about the tower. Another resident, Dana Carter, cited to a study published in *The Appraisal Journal* that "buyers would pay as much as 20 percent less for a property near a cell tower" and cited another study from *Realtor Magazine* indicating that "94% of home buyers and renters surveyed … say they are less interested and would pay less for a property located near a cell tower." Eco-Site does not offer any evidence to the contrary.

[7] Although public hearings on CUPs are not subject to the rules of evidence, we note that, even under those stricter rules, a witness may give his or her opinion as to value of property the witness owns. *See Wilberscheid v. Wilberscheid*, 77 Wis. 2d 40, 48, 252 N.W.2d 76 (1977) (an owner is competent to give opinion evidence on value); *see also* WIS. STAT. § 907.01.

and lost sales as a solely aesthetic concern, which is prohibited and which we discuss further below.

¶18 Eco-Site argues the denial for incompatibility is invalid because the statute prohibits a municipality from banning such a structure from a "particular" location. *See* WIS. STAT. § 66.0404(4)(c) (the municipality may not "[e]nact an ordinance prohibiting the placement of a mobile service support structure in particular locations"). We disagree that the statute was violated. The ordinance does not identify any specific spot or area within the Town where such structures are prohibited. Rather, the ordinance turns on whether the structure is compatible with the adjacent land and its current uses, and Eco-Site fails to show how this language targeted this particular location to preclude a tower.

¶19 Eco-Site next argues that denying the application based on incompatibility contradicts the Town's own zoning ordinance, which specifically allows for the placement of mobile towers in an A-1 zoning district as a conditional use. *See* TOWN OF CEDARBURG, WIS., CODE §§ 320-25C.(5), 320-107. This is an overreach. Simply because mobile towers can be considered in A-1 zoning districts does not of course mean each one passes muster for compatibility or otherwise. In Wisconsin, a conditional use is "one that has been legislatively determined to be compatible in a particular area, not a use that is always compatible at a specific site within that area." ***AllEnergy Corp. v. Trempealeau Cty. Env't & Land Use Comm.***, 2017 WI 52, ¶54, 375 Wis. 2d 329, 895 N.W.2d 368. Thus, there is no presumption that a "conditional use is <u>ipso facto</u> consistent with the public interest or that a conditional use is a use as of right at a particular

site within an area zoned to permit that conditional use." *Id.*, ¶55. The ordinance permits towers, if the conditions are met, but it does not rubber stamp them. *See* CODE § 320-51.[8]

*The Town Did Not Deny The Application Because Of Aesthetic Concerns Solely*

¶20 Eco-Site asserts that the Town's denial on the basis of not only incompatibility, but on the basis of lost property values and the detrimental effect on public health and safety and general welfare, equates to a denial based on aesthetic concerns, which as noted is prohibited by statute if it is the sole reason. *See* WIS. STAT. § 66.0404(4)(g). Eco-Site points out the following comments from the Town's letter, which it believes show that aesthetics were the only reason for the denial (emphasis added):

> [T]here would be considerable and foreseeable property value loss to residents in the vicinity of the tower site, and particularly big impact on the property values because of the rural and rustic nature of the unique piece of property…. [C]onstructing a large metal monopole steel structure with an *unsightly metal platform comprised of lots of exposed metal in the middle of utopia* will have a great impact on property values ....
>
> [T]he tower is [not] compatible with the surrounding area ... and is just about as incompatible as he could imagine.... Supervisor Wickert['s] ... comments ... will be focused on incompatibility of the tower in an area they are struggling to keep rural and rustic, and preserve it as such.

---

[8] Eco-Site also takes the Town to task for not proposing certain conditions that would mitigate the Town's concerns about incompatibility, without citing to any case or authority that suggests a Town has such an obligation. Our supreme court has held otherwise. A board of adjustment does not have the burden of formulating conditions enabling an applicant to obtain a CUP. *Edward Kraemer & Sons, Inc. v. Sauk Cty. Bd. of Adjustment*, 183 Wis. 2d 1, 16, 515 N.W.2d 256 (1994). Such uses are permitted uses only when the standards prescribed by the ordinance are met. *Id.* The applicant has the burden of showing that these standards are met. *Id.* at 16-17.

> Third, the granting of the permit would be detrimental to the public health, safety, morals, comfort or general welfare. *Taking a beautiful and scenic area and dropping a metal tower in the middle of it* is detrimental to the general welfare of the public.

(Emphasis added.) Eco-Site also notes that, at the May 3 hearing, Wickert stated that the tower was "the equivalent of a giant erector set" that would be a "very real assault" on "a very beautiful part of our town."

¶21 There can be no doubt that there were comments on the aesthetic impact—that the tower would be a visual blight and unattractive.[9] However, the incompatibility conclusion is far more than a denial based on aesthetic, or visual, "concerns." The visual impact of the tower is different than the broader impact of the tower on the uses and the lifestyle for which the neighborhood is zoned. The visual impact of the tower is also different than the economic impact on the property values—a concrete impact on the neighbors' pocketbooks and the Town's property tax revenue. The impacts of these different "concerns" are not one and the same. An unsightly tower could certainly be placed in a location that would be compatible with the neighborhood uses and values due to the particular site, and vice versa, as the Town determined here.

¶22 In sum, as noted, the zoning ordinance for CUPs has six requirements and at least one of them is missing (the compatibility requirement), such that the Town's denial of the application was justified. Because the incompatibility standard is a valid basis to deny the application, it simply does not matter that aesthetic comments were made. The statute regarding aesthetics is in

---

[9] The statute refers to "aesthetic concerns." WIS. STAT. § 66.0404(4)(g). "Aesthetic" means relating to or dealing with "the beautiful … ARTISTIC … pleasing in appearance: ATTRACTIVE." *Aesthetic*, MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1997).

accord:  it states that an application must not be disapproved "based *solely* on aesthetic concerns." WIS. STAT. § 66.0404(4)(g) (emphasis added).

¶23    We note that, if the legislature intended to eliminate broader concerns than the visual, it could have done so by modifying the statutory language.  For example, the legislature could have stated that an application must not be disapproved for reasons "arising out of" or "relating in any way to" aesthetic concerns.  By choosing the term "solely," the legislature purposefully used limiting language—*only* aesthetic concerns.  We give statutory language its "common, ordinary, and accepted meaning" and "reasonable effect to every word." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110.[10]

*Substantial Evidence Supported The Town's Denial*

¶24    Eco-Site argues that, even if valid reasons were given to support the denial, those reasons were not supported by substantial evidence.  On certiorari, we are limited to ascertaining whether there is substantial evidence to support the Town's decision.  *Van Ermen v. DHSS*, 84 Wis. 2d 57, 64, 267 N.W.2d 17 (1978).  Here, substantial evidentiary support is also a statutory requirement.  WIS. STAT. § 66.0404(2)(d)4.  We conclude there was enough evidence.

---

[10] Notably, the statute dispenses with the limiting language applicable to new towers—solely—instead precluding disapproval of class 2 collocation applications "on aesthetic concerns." WIS. STAT. § 66.0404(4)(gm).  A class 2 collocation means the placement of a new mobile service facility on an existing tower without substantial modification.  The different language applicable to existing towers underscores our reading that, as it relates to new towers, "solely aesthetic concerns" does not preclude the other grounds identified by the Town.

¶25     "Substantial evidence," as is required to support a decision on an application for a CUP, is evidence where reasonable persons could decide as the Town did. *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶43, 362 Wis. 2d 290, 865 N.W.2d 162 (2015).  We are not asked to weigh the evidence, nor may we substitute our view of the evidence for that of the Town. *Van Ermen*, 84 Wis. 2d at 64.

¶26     Substantial evidence is less than a preponderance of the evidence, but it is more than a mere scintilla of evidence and more than conjecture and speculation. *Oneida*, 362 Wis. 2d 290, ¶44.  Overcoming the substantial evidence test is difficult because it is deferential to the Town's decision, and a "[c]ertiorari review accords the decision of the local governmental entity a presumption of 'correctness and validity.'" *AllEnergy Corp.*, 375 Wis. 2d 329, ¶88 (citation omitted).[11]

---

[11] When we review whether there is substantial evidence, Eco-Site argues that we may only consider the evidence contained within the Town's May 3, 2017 three-page letter disapproving the application.  It cites WIS. STAT. § 66.0404(2)(d)4., which states that "[i]f the decision is to disapprove the application, *include with the written notification substantial evidence* which supports the decision." (Emphasis added.)  We note that per the federal statute, upon which the state statute appears to be based, the decision must be supported by substantial evidence contained within "a written record." *See* 47 U.S.C. § 332(c)(7)(B)(iii); *T-Mobile South, LLC v. City of Roswell*, 135 S. Ct. 808, 811-12, 814-15 (2015) (record should be viewed in its entirety).  The Town argues that the statute simply requires delineation of the reasons for denial in the written notification, but contends that the statute places no other constraint on a review of the entire record by a certiorari court for factual support.

(continued)

¶27 We need only decide whether there is substantial evidence supporting the Town's decision on the compatibility ordinance. There is. The simple undisputed facts are the Akerlund farm is surrounded by areas zoned residential, and the Town has been trying to keep this area rustic and rural. We earlier agreed that the Town's application of the compatibility requirement was in accord with the ordinance and reasonable, as the conflicting natures of a sky-high cellular tower and the simple, agrarian and residential spread of land at this site were noted. Likewise, although the tower itself will not be placed in the residential areas, it will be very close by, and it was reasonable for the Town to conclude that the tower was incompatible with many of the neighboring homeowners' residential lifestyle, and for some, the values of their homes would be diminished by the ominous, shadow-casting tower. Several people at the hearings spoke out on these terms. True, no one produced a large-scale, detailed analysis of the financial effect of the tower. But that is not needed given our standard of review. Whether such a tower is "as incompatible as [Supervisor Wickert] could imagine" for the surrounding residential and rustic areas, the evidence reasonably supports the Town's decision.[12]

---

Accepting without deciding that the statute limits review to the written grounds, the grounds identified in the May 3 letter suffice to support the denial. Beyond that, we see no reason the legislature would have precluded a review of the record, limiting the analysis to a document that is clearly intended to provide a summary of the reasons for the denial. This is particularly so, given that the process often involves extensive written testimony and materials. Here, the letter makes reference to the public hearings at which residents offered their views and information. The substance of the letter, the fact that it was written after consideration of hundreds of documents and public testimony, and its references to the other evidence and testimony are enough to meet the requirements of WIS. STAT. § 66.0404(2)(d)4.

[12] Because we conclude the Town's denial of the CUP was supported with substantial evidence and was not based on solely aesthetic concerns, we need not reach the Town's other arguments supporting its denial.

*By the Court.*—Judgment affirmed.

No.  2018AP580(C)


¶28    REILLY, P.J. (*concurring*).  I concur but for a reason other than those stated by the majority.  Preemption laws, whether they be for communication towers or landfills, are promulgated to address needs that benefit the public but are subject to a "NIMBY" response—yes, we need cell towers, but "not in my backyard."  Neither T-Mobile nor Eco-Site argues that the public's communication needs are not being met by the current towers in the Town.  *See* 47 U.S.C. § 332(c)(7)(B)(i)(II) (2018).  I would affirm on the Town's fourth reason for denial of the conditional use permit (CUP):  (1) that Eco-Site did not explain its efforts at collocation, i.e., Eco-Site did not explain why T-Mobile and others could not utilize existing locations (the water tower that T-Mobile's equipment is on), and (2) that its "search ring" was "unnecessarily small."  *See* WIS. STAT. § 66.0404(2)(b)6.

¶29    T-Mobile has its antenna 1300 feet from the proposed site under contract through 2031.  While T-Mobile can save approximately $230,000 by becoming the anchor tenant on Eco-Site's tower and Eco-Site will profit by selling the remaining locations on its tower to other communication companies, there has been no showing that without Eco-Site's tower the communication needs of the Town would not be met.[1]  The fact that T-Mobile wants to save money and Eco-

---

[1] T-Mobile paid the Village of Grafton $35,525.86 in 2017 for its lease.  T-Mobile's savings would be approximately $230,000 if it moved to the Eco-Site tower.  Eco-Site explained that the proposed tower will "accommodate future collocation opportunities for other carriers."

Site wants to make money is not a legitimate reason to override zoning regulations.

¶30    Eco-Site argues that state and federal legislation bans the Town from considering the views and opinions of the residents in close proximity to the proposed tower (i.e., that the tower is ugly and the mere talk of a tower has decreased property values). *See* WIS. STAT. § 66.0404(4)(g). Eco-Site's concerns might have merit if no communication service sites were available in the Town, but when a governmental body has already provided areas for the infrastructure to provide communication needs in the area,[2] then communication companies are rightfully required to abide by zoning laws and utilize the sites provided.

¶31    My fear is that by adopting either the argument of Eco-Site or the reasoning of the majority, we end up with a conclusion that all property owners have the right to put up a tower.

---

[2] Eco-Site makes no argument that the Town is requiring that the communication equipment may only be placed on property owned by the Town. *See* WIS. STAT. § 66.0404(4)(k).